(CONSTITUTIONAL LAW.)

## SLOCUM v. MAYBERRY et al.

The courts of the United States have exclusive jurisdiction of all seizures made on land or water, for a breach of the laws of the United States; and any intervention of a state authority which, by taking the thing seized out of the hands of the United States officer, might obstruct the exercise of this jurisdiction, is unlawful.

In such a case, the court of the United States, having cognizance of the seizure, may enforce a re-delivery of the thing, by attachment, or other summary process.

The question under such a seizure, whether a forfeiture has been actually incurred, belongs exclusively to the courts of the United States, and it depends upon the final decree of such courts whether the seizure is to be deemed rightful or tortious.

If the seizing officer refuse to institute proceedings to ascertain the

1817.

Slocum
v.
Mayberry.

for eiture, the district court may, upon application of the aggrieved party, compel the officer to proceed to adjudication, or to abandon the seizure.

And if the seizure be finally adjudged wrongful, and without probable cause, the party may proceed, at his election, by a suit at common law, or in the instance court of admiralty, for damages for the illegal act.

But the common law remedy in such a case must be sought for in the state court. the courts of the United States having no jurisdiction to decide on the conduct of their officers, in the execution of their laws, in suits at common law, until the case shall have passed through the state courts.

Where a seizure was made, under the 11th section of the Embargo Act of April, 1808, it was determined that no power is given by law to detain the *cargo* if separated from the *vessel*, and that the owner had a right to take the cargo out of the vessel, and to dispose of it in any way not prohibited by law; and in case of its detention, to bring an action of replevin therefor in the state court.

ERROR on a judgment rendered by the supreme court for the state of Rhode-Island.

John Slocum, the plaintiff in error, was surveyor of the customs for the port of Newport, in Rhode-Island, and under the directions of the collector had seized the Venus, lying in that port with a cargo ostensibly bound to some other port in the United States. The defendants in error, who were owners of the cargo, brought their writ of replevin in the state court of Rhode-Island for the restoration of the property. The defendant pleaded that the Venus was laden in the night, not under the inspection of the proper revenue officers; and that the collector of the port, suspecting an intention to violate the embargo laws, had directed him to seize and detain her till the opinion of the president

should be known on the case; and concluded to the jurisdiction of the court. The same matter was also pleaded in bar. To both these pleas the plaintiff in the state court demurred, and the defendants joined in demurrer. Judgment having been rendered in favour of the plaintiff in the state court, the cause was removed into this court by writ of error.

The *Attorney-General* for the plaintiff in error. 1. The seizure was well made under the 11th section of the embargo act of the 25th of April, 1808. The nature and extent of the power vested in the revenue officers was settled in the case of Crowell v. M'Fadon.[a] Even admitting that, according to the doctrine held in the case of the Paulina,[b] the landing without a permit, contrary to the second section, does not work a forfeiture, (the denial of a clearance being the only penalty,) still the efficacy of the eleventh section justifies and protects the officer. 2. The case being brought under the cognizance of the United States, and within the jurisdiction of their courts, by the just exercise of an authority by one of their officers, the state court had no right to interfere, and arrest the seizure by its process. In the case of the Favourite,[c] three of the judges held, that " the conduct of the salvors in taking the goods out of the possession of the revenue officers, though by legal process, was improper." This intimation

a  8 *Cranch*, 96.                    b  7 *Cranch*. 52.
c  4 *Cranch*, 347.    See also 1 *Binney*, 138.  *Soderstrom's* case.
2 *Hall's Law* Journal, 195.

1817.

Slocum
v.
Mayberry.

is the stronger, as the wrecked goods were adjudged not liable to duties; and it is fortified by the opinion of a learned judge in the supreme court of New-York, upon an analogous question.[4]

d 9 *Johns. R.* 239. Per KENT, Ch. J.    This was an application to the supreme court of the state of New-York, at August term, 1812, for the allowance of a writ of *habeas corpus*, directed to John Christie, a lieutenant-colonel in the army of the United States, to bring up the body of Jeremiah Ferguson, founded upon an affidavit of his father, stating that he was an enlisted soldier in the 13th regiment of infantry in the army of the United States, then under the command of Christie, and that the said Jeremiah Ferguson was an infant under the age of 21 years, &c., and that he enlisted without his father's consent, and was desirous of being released and discharged.    The chief justice, in delivering his opinion, stated, "that the present case being one of an enlistment under colour of the authority of the United States, and by an officer of that government, the federal courts have complete and perfect jurisdiction in the case; and there is no need of the jurisdiction or interference of the state courts; nor does it appear to me to be fit that the state courts should be in-

quiring into the abuse of the exercise of the authority of the general government.    Numberless cases may be supposed of the abuse of power, by the civil and military officers of the government of the United States; but the courts of the United States have competent authority to correct all such abuses, and they are bound to exercise that authority. The responsibility is with them, not with us; and we have no reason to doubt of their readiness, as well as ability, to correct and punish every abuse of power under that government.    The judicial power of the United States is commensurate with every case arising under the laws of the union; and the act of congress (1 Laws of the U. S. 53, 55.) gives to the federal courts, exclusively of the courts of the several states, cognizance of all crimes and offences, cognisable under the authority of the United States."    The other judges concurred in refusing to allow the *habeas corpus*, deeming that a question of sound legal discretion; but reserved themselves as to the jurisdiction of the state courts.

Mr. *Hunter*, contra. 1. It is conceded that the opinion or suspicion of the collector authorized him to detain any *vessel*, ostensibly bound with a *cargo* to some port of the United States, until the pleasure of the president should be known. This is not a replevin for the vessel. As to *that*, the owners submitted to the suspicion of the collector, and the pleasure of the president; but as to the *cargo*, neither of these officers had, by law, the power of detaining it. A momentary and unavoidable detention of the cargo, incidental to the seizure of the vessel, might indeed be deemed a necessary consequence of an undeniable power; but could never give the seizing officer a right to continue the detention of the cargo after the vessel was securely detained. *Cargo*, in the revenue laws; in the law of prize; and in questions of salvage, insurance, and freight; is contra-distinguished from *vessel*. The system of the embargo laws was intended to prevent exportation; and, in order to accomplish this only, they authorized the detention of the vehicle, without which no exportation could take place. Even the vessel was not forfeited, but detained; and the cargo was neither forfeited nor detained, but left in the possession of the owners to be freely consumed at home. The laws of the United States having then exerted their energy, and performed their office, the subsequent proceedings were illegal. In the case of Crowell v. M'Fadon, the action was *trover*. Lucrative damages were sought for a conversion proved not to be wrongful, but assented to by the party. Here the action is *replevin*, and the

1817.

Slocum
v.
Mayberry.

party only seeks to retain what is universally admitted to be his property. *Incommoda vitantis quam commoda petentis melior est causa.* 2. The plea to the jurisdiction of the state court is fatally defective in not stating another jurisdiction.[e]   3. But even supposing the decision of this court must be against the jurisdiction of the state court, no judgment can be pronounced upon that basis.   The thing in controversy cannot be restored to the plaintiff in error, for he never owned or claimed it; and the authority of the Paulina[f] is sufficient to dissipate the mistaken notion of a forfeiture to the United States.   No collision between the state and national judicatures can, therefore, arise.   Even if the state court has improperly interfered, it is, at the worst, an innocent officiousness; since that court has determined the question precisely as the national tribunals would have done, and has merely anticipated the beneficence they intended.   The mischief that the common law writ of prohibition seeks to remedy is the inconvenience of having the same question determined different ways, according to the court in which the suit is depending.   But if it be shown to the court trying a suggestion in prohibition, that the question has been, or must be, determined exactly as the appropriate court would determine it, its merely being drawn *at aliud examen* would not be a sufficient ground for issuing the writ of prohibi-

e *Doct. Pl.* 23. 1 *Vesey,* 213. Mostyn v. Fabrigas.   *Cowp.* 172.
2 *Vesey,* 237.   3 *Atk.* 662.
f 7 *Cranch,* 52.

tion.[g] No usurpation can be ultimately successful against the national jurisdiction. The very clause of the Judiciary Act of 1789, (sec. 25.) by which the cause is brought here, shows that this jurisdiction is amply armed for self defence. But this transaction does not present any thing for the judicial powers of the United States to act upon. The case of the Favourite was a question of salvage, depending, as such questions always do, upon personal merit and propriety of conduct. A severe assertion even of legal right may, in many instances, amount to *demerit*. In the case of Mr. Soderstrom,[h] the very words of the 9th section of the Judiciary Act expressly excluded the state courts from jurisdiction. In that case there was a personal privilege in the consul, and an absolute disability in the court. The *dictum* of the chief justice of the supreme court of New-York, in the case of Ferguson, was disclaimed by the rest of the court, although under the particular circumstances of the case they declined to interfere. Unless the state tribunals have a right to interfere with the aid of their preventive process, in a case where the national jurisdiction has not lawfully attached. property detained under colour of authority may be dissipated by rapacious profusion, because a timely replevin could not be interposed.

The *Attorney-General*, in reply. 1. The plea of the defendant in the court below covers both the vessel and the cargo, and being demurred to, its facts

g 3 *Bl. Com. c.* 7.                    h 1 *Binney*, 138.

1817.

Slocum
v.
Mayberry.

are admitted. Both must be detained, where they are seized cotemporaneously; and to permit a subsequent transhipment of the cargo from the vessel where it was found *in delicto,* to another, would be to defeat the policy of the law. In the case of Otis v. Watkins,[j] both vessel and cargo were removed from Provincetown to Barnstable, yet the conduct of the collector was held justified. 2. The rule, that he who pleads to the jurisdiction ought to give it to some other court, must be taken with the proper qualifications. Another jurisdiction must be shown, where it exists, or is intended to be claimed over the subject matter of the suit. But here it was intended only to except to the officious, unlawful jurisdiction of that court where the officer was impleaded. 3. The plea of the defendant in the court below is not an *avowry,* which goes for a restitution of the thing in controversy; he merely *makes cognizance,* acknowledges the taking, but justifies under the law, and the orders of the collector. Hence the argument, that a reversal of the judgment below would imply a restitution of the cargo to the seizing officer as his property, is inapplicable. Where, from the circumstances of the case it was lawful to *take,* and yet, from intervening events, unlawful to detain, the defendant cannot be entitled to a return.[k] The seizure, in this case, though it looked to no direct forfeiture or even to a trial, yet, being a necessary incident to a seizure, having in view a forfeiture,

---

[j] 9 *Cranch,* 339.   [k] *Roll. Abr.* 319.   *Bull. N. P.* 55.

it falls within the scope of the 9th section of the judiciary act, as fairly as the cases positively enumerated; and a contrary determination would efface from the statute book those preventive means by which a complexity of litigation is avoided.

Mr. Ch. J. MARSHALL delivered the opinion of the court, and after stating the facts, proceeded as follows:

In considering this case, the first question which presents itself is this: Has the constitution, or any law of the United States, been violated or misconstrued by the court of Rhode-Island in exercising its jurisdiction in this cause?

The judiciary act gives to the federal courts exclusive cognizance of all seizures made on land or water. Any intervention of a state authority which, by taking the thing seized out of the possession of the officer of the United States, might obstruct the exercise of this jurisdiction, would unquestionably be a violation of the act; and the federal court having cognizance of the seizure, might enforce a re-delivery of the thing by attachment or other summary process against the parties who should devest such a possession. The party supposing himself aggrieved by a seizure cannot, because he considers it tortious, replevy the property out of the custody of the seizing officer, or of the court having cognizance of the cause. If the officer has a right, under the laws of the United States, to seize for a supposed forfeiture, the question, whether that forfeiture has been actually incurred, belongs exclusively to the

federal courts, and cannot be drawn to another forum; and it depends upon the final decree of such courts whether such seizure is to be deemed rightful or tortious. If the seizing officer should refuse to institute proceedings to ascertain the forfeiture, the district court may, upon the application of the aggrieved party, compel the officer to proceed to adjudication, or to abandon the seizure. And if the seizure be finally adjudged wrongful, and without reasonable cause, he may proceed, at his election, by a suit at common law, or in the admiralty for damages for the illegal act. Yet, even in that case, any remedy which the law may afford to the party supposing himself to be aggrieved, other than such as might be obtained in a court of admiralty. could be prosecuted only in the state court. The common law tribunals of the United States are closed against such applications, were the party disposed to make them. Congress has refused to the courts of the union the power of deciding on the conduct of their officers in the execution of their laws, in suits at common law, until the case shall have passed through the state courts, and have received the form which may. there be given it. This, however, being an action which takes the thing itself out of the possession of the officer, could certainly not be maintained in a state court, if, by the act of congress, it was seized for the purpose of being proceeded against in the federal court.

A very brief examination of the act of congress will be sufficient for the inquiry, whether this cargo was so seized. The second section of the act,

pleaded by the defendant in the original action, only withholds a clearance from a vessel which has committed the offence described in that section. This seizure was made under the 11th section, which enacts, " that the collectors of the customs be, and they are hereby respectively authorized to detain any vessel ostensibly bound with a cargo to some other port of the United States, whenever, in their opinion, the intention is to violate or evade any of the provisions of the acts laying an embargo, until the decision of the president of the United States be had thereupon."

The authority given respects the vessel only. The cargo is in no manner the object of the act. It is arrested in its course to any other port, by the detention of the vehicle in which it was to be carried; but no right is given to seize it specifically, or to detain it if separated from that vehicle. It remains in custody of the officer, simply because it is placed in a vessel which is in his custody; but no law forbids it to be taken out of that vessel, if such be the will of the owner. The cargoes thus arrested and detained were generally of a perishable nature, and it would have been wanton oppression to expose them to loss by unlimited detention, in a case where the owner was willing to remove all danger of exportation.

This being the true construction of the act of congress, the owner has the same right to his cargo that he has to any other property, and may exercise over it every act of ownership not prohibited by law. He may, consequently, demand it from the officer

1817.

Slocum
v.
Mayberry.

in whose possession it is, that officer having no legal right to withhold it from him; and if it be withheld, he has a consequent right to appeal to the laws of his country for relief.

To what court can this appeal be made? The common law courts of the United States have no jurisdiction in the case. They can afford him no relief. The party might, indeed, institute a suit for redress in the district court acting as an admiralty and revenue court; and such court might award restitution of the property unlawfully detained. But the act of congress neither expressly, nor by implication, forbids the state courts to take cognizance of suits instituted for property in possession of an officer of the United States not detained under some law of the United States; consequently, their jurisdiction remains. Had this action been brought for the vessel instead of the cargo, the case would have been essentially different. The detention would have been by virtue of an act of congress, and the jurisdiction of a state court could not have been sustained. But the action having been brought for the cargo, to detain which the law gave no authority, it was triable in the state court.

The same course of reasoning which sustains the jurisdiction of the court of Rhode-Island sustains also its judgment on the plea in bar. The two pleas contain the same matter; the one concluding to the jurisdiction of the court, and the other in bar of the action. In examining the plea to the jurisdiction, it has been shown that the officer had no legal right to detain the property; consequently, his plea was

no sufficient defence, and the court misconstrued no act of congress, nor committed any error in sustaining the demurrer.

### Judgment affirmed with costs.