The Chief Justice delivered the opinion of the court.
This action is in replevin. The declaration charges that the defendant, on the 1st day of May, 1829, in the township of Perth Amboy in the county of Middlesex, in a certain close there, took the goods and chattels, to wit: the ship called The Maria, of him the plaintiff, and unjustly detained the same until replevied. The defendant avows the taking, and justifies it because at and before the time, he was the marshal of the United States for the District of New Jersey ; that a writ of fieri facias from the District Court of the Southern District of New York, upon a judgment in a plea of debt, recovered in that court by the United States against John Bloodgood, Herman Bruen and George AV. Bruen, was placed in his hands by the attorney of the United States for the said Southern District of New York; that the goods and chattels mentioned in the declaration were by the said attorney shewn to him as the property of the said George AV. Bruen, on which he was accordingly directed to levy by virtue of the said execution; and on which he did levy as the property of the said George AV. Bruen; and seized and took the same as such marshal, under and by virtue of the said execution ; and that at the commencement of this suit, the said goods and chattels, wore in his possession as such *marshal by virtue of the said execution and levy. [*373 To this avowry, the plaintiff has filed a demurrer.
The first question presented for consideration by these pleadings is, whether goods taken in execution are replevisable ; for if this question in its broad and general terms is *442 answered in. the negative, the case requires no farther research. Ry virtue of an execution the vessel mentioned in the declaration was seized and taken by the defendant was in his possession at the commencement of the suit. The truth of this allegation of the avowry is admitted by the demurrer.
The use of the writ of replevin and the relief afforded by it, are not limited to the taking of goods and chattels by way of distress.. Where goods or chattels are unlawfully taken, where they are so taken as to entitle the owner or possessor to an action of. trespass, an action of replevin may be maintained. Such is the doctrine of the common law, and it has been in no wise abridged or altered by our statute, the first section of which authorizes the writ, “ if the goods and chattels of any person, be taken and wrongfully detained.” Rev. Laws 212. The common law doctrino is to be learned from the voice of authority rather than from any course of reasoning. The subject has been several times examined by the 'Supreme Court of New York. Their researches have been so full and extensive and the deductions from them so sound and satisfactory, that I shall for the present occasion, simply refer to some of them, without a formal reference to the English cases and books, which will be there found faithfully stated and correctly reviewed. In Pangburn v. Partridge, 7 John. 140, the court held that replevin will lie for any unlawful taking of a chattel, that possession by the plaintiff and an actual, wrongful taking by the defendant, are the only points requisite to support the-action. The opinion of the court on a motion for new trial was delivered by Justice Van Ness. On the trial he had ruled that replevin would lie only in case of an unlawful distress. He admitted that he had mistaken the law. He said, “ the old authorities are that replevin lies for goods taken tortiously or by a trespasser, and that the party injured may have replevin or trespass at his election.” ITe cited a train of reports and abridgments from the year books *443 of the 4th and 7th Henrys to Schoale and Lefroy. In Thompson v. Button, 14 John. 84, it was held that replevin might be brought *on the unlawful taking of chattels. [*374 In Clark v. Skinner, 20 John. 465, Platt, J., in delivering the opinion of the court, says, “ The rule I believe is without exception, that wherever trespass will lie, the injured party may maintain replevin.” He enters into an examination of the cases and states his conclusion that not only the actual, but the constructive possession of the owner, by which he explains himself to mean, a right to reduce the chattel to immediate possession, is sufficient. On this latter point the other judges, thinking the case did not require it, expressed no opinion. In Marshal v. Davis, 1 Wend. 109, where the subject again came before the court, they held the correct rule to be, “ that replevin will lie in all cases where trespass de bonis asportatis can be maintained;” and that “ the decisions in that court place replevin on the same ground as trespass.” And the whole court now agreed that the plaintiff, as in trespass, must have either actual possession, or property and constructive possession, that is to say, a right to reduce the article to his possession at pleasure. In Meany v. Head, 1 Mason 322, the general doctrine I have stated was recognized by Justice Story in the Circuit Court of the United States. He said, “At common law, a writ of replevin never lies unless there has been a tortious taking either originally, or by construction of law by some act which makes the party a trespasser ab initio.” The action of replevin at the outset restores the possession of the property, and in the conclusion affords a recompense in damages for the wrongful deprivation. While on the other hand, if he who has taken the goods, claims, property in them, they are not restored, nor the writ of replevin executed, until this claim of property is first tried and determined. The action of trespass gives redress by damages, but does not restore the property itself oftentimes much more estimable than any amount of damages, and *444 which no pecuniary remuneration can adequately supply. The remedy by replevin is therefore prompt, efficacious and beneficial, and the use of it on proper occasions should be rather fostered than repressed.
Another rule of the common law is well settled ;. that in all cases, the sheriff or officer must, at his peril, execute the writ of fieri facias, only on the goods of the party therein mentioned ; and if he seize the goods of a stranger he will be liable to an action of trespass. Saunderson v. Baker, 2 W. *375] B. 832; 3 Wils. 309; Ackworth *v. Kempe, 1 Doug. 40; Dawson v. Wood, 3 Taunt. 256. Bacon says, the absolute property of the goods must be in the debtor, and therefore if the sheriff takes the goods of a stranger, though the plaintiff assures him they are the defendant’s, he is a trespasser, for he is obliged at his peril to take notice whose the goods are. Bac. abr. tit. Execution C. 4.
• Erom these rules, first, that an action of trespass will lie where the goods of a person actually or constructively in his possession, are unlawfully taken ; secondly, that the same action will lie against an officer who takes the goods of one by virtue of an execution against another; and thirdly, that the action of replevin will lie where trespass may be maintained, a conclusion seems irresistibly to follow that, under certain circumstances, goods taken in execution are replevisable; and we also learn what those circumstances are. The reason given for the exclusion of this remedy in certain cases, is that goods in execution are in the custody of the law; and when they are so, it is true, resort cannot be had to this action; but when the goods are thus wrongfully taken by the officer, the reason fails. When the goods are taken by an abuse of authority, they are not in" the custody of the law. In Thompson v. Button, in replevin, the Supreme Court of Uew York held that as a general principle goods taken in execution are in the custody of the law, and it would be repugnant to sound principles to permit them to be taken out of such custody, when the officer has found *445 them in and taken them out of the possession of the defendant in execution. But if an officer having an execution against A, undertakes to execute'it upon goods in the possession of B, he assumes upon himself the responsibility of shewing that such goods were the property of A. And if he fails so to do, ho is a trespasser by taking them. In Clark v. Skinner, in replevin, Platt, J. for the court, said, “ By goods taken in execution, I understand, goods rightfully taken in obedience to the writ, but if through design or mistake, the officer takes goods which are not the property of the defendant in execution, he is a trespasser, and such goods never were taken in execution in the true sense of the rule. If goods be taken on a fi. fa. as the property of the defendant named in the execution, and the writ is from a court of competent jurisdiction and not void for any defects on its face, the officer as against such defendant is never a trespasser nor a wrong doer. *As [*376 to such defendant the property is in the custody of the law, and he is concluded by the judgment against him. But such reasoning has no application to the rights of a stranger whose property has been wrongfully taken on an execution against a third person.” In Slocum v. Mayberry, 2 Wheat 1, the revenue officer had seized and detained both vessel and cargo under the embargo act. The Supreme Court of the United States held that the officer had power to seize and detain the vessel only, and not the cargo; and maintained an action of replevin brought for the latter by the owner. In Martin v. Mott, 12 Wheat. 19, in replevin where the defendant being a deputy marshal of the United States, avowed and justified the taking of the goods by virtue of a certificate issued to the marshal, to collect a fine imposed on the plaintiff by the judgment of a court martial, the court enter into an elaborate argument to prove that the matter set forth in the avowry was sufficient authority to the officer to take the goods, and do not summarily dispose of the controversy by saying that the goods were taken in *446 execution, and therefore were not replevisable, as we cannot hesitate to believe they wtiuld have done, had such in their opinion been the rule of law.
From this view of the subject, we learn what circumstances will protect an officer taking goods under color of an execution from an action of replevin; what facts will'' furnish him a defence against the action; and, consequently,, what matters he should set out in the answer he files to the declaration of the plaintiff. If the action of replevin is brought by the defendant in the execution, it is sufficient to shew the judgment and execution against him; it need not be stated that the goods belonged to him, or at the taking were in his possession; for as to him these points are unimportant and incontrovertible. He has no ground of complaint, though the goods really belong to, and are taken from the possession of another person. If the plaintiff in replevin is not the defendant in execution, besides shewing the judgment and execution, the officer should aver that the goods were the property of the defendant in execution; or at least that they were taken in and from his possession. The precedents of justificatory pleas, by officers, will be found to conform to these principles. 2 Chit. 585, 587; Lilly’s Entr. 442; 9 Went. 22, 87, 120.
Having ascertained these principles, we are enabled to *377] apply *the test to the defendant’s avowry. He has thereby acknowledged the taking of the vessel as charged in the declaration, and the trespass stands confessed, unless the matters alleged are a legal justification of the act, and therefore remove the imputation of trespass. A judgment and execution in debt against George W. Bruen, a third person, not the plaintiff in replevin, are set out. The marshal avers the goods were shewn to him as the property of George W. Bruen; and that as such he seized, took and detained them. Ho issue could usefully be taken on these averments. He does not assert that the goods were the property of George W. Bruen. He does not assert that th e *447 vessel at the seizure was in the possession of George W. Bruen. No intendment or inference or presumption, can supply the want of direct averments. The plea is to be understood only as plainly spoken. The law, wisely 'framing its rules upon experience and a knowledge of human action, supposes that every man says whatever he can in his own favor, that he makes the most and best of his own case. His plea is, therefore, construed most strongly against him. A mbiguurn ploxitum interpretan debel contra proferentem.
According to these principles, the matters contained in the avowry, are not a legal defence against the action.
Another question of a more interesting character, is fairly raised upon these pleadings, and has been discussed at the bar. The vessel was seized by an officer of the United States, under process from a court of the United States, and upon a judgment in favor of the United States. Hence it is insisted, by the counsel of the defendant, that how just soever may be the complaint of the plaintiff, and how well soever he may be entitled to a restoration of the property, and to pecuniary recompence, this court, a state court, has no jurisdiction. All questions of jurisdiction are of deep .and vital importance, and especially such as concern the courts of the Union. So essential are those courts to the welfare of this nation; so necessary is the free and unembarrassed exercise of their powers to the healthful vigor of the constitution; so thoroughly entwined around them are the rights of the people and the states; so distinguished for purity, integrity, impartiality and learning, has been their administration of law and justice; so eminently and justly have "they won the respect and affection of every friend of his country, that their jurisdiction is not to be ^approached with- [*378 out a feeling nearly allied to reverence. Holding and cherishing such sentiments to their utmost justifiable extent, we are not to overlook the correlative duty to our own laws and to ourselves. Our own jurisdiction mgst, at all times, be respectfully vindicated, unequivocally asserted, and firmly maintained.
*448 At the outset of the investigation which is to be made, we should observe, and throughout bear in mind, that the process shown by the defendant for his protection, is a common law writ; the judgment, so far as appears, is in an ordinary matter of debt, without any peculiar or extraordinary lien, authority or operation ; certainly so, as respects the plaintiff in this action, who is neither party nor privy to that judgment.
The questions involved in this cause, so far as they are developed by the pleadings now before us, are, as no one will dispute, within the jurisdiction of this court, unless excluded by the constitution of the United States, or by some law founded upon and carrying out the provisions of that instrument. The main question seems to be whether the vessel is the property of the plaintiff, or was taken from his possession ? If neither, he has no cause of complaint. If he has, it remains to ascertain what amount of damages will redress his injury.
The authors of The Federalist, whose writings, without other claims on the gratitude of their country, would have secured to them an imperishable name, and which are now resorted to with almost the veneration of judicial authority, say that the state courts under the constitution retain the jurisdiction they previously had, unless where an exclusive authority is in express terms granted t,o the union, or where a particular authority is granted to the union and the exercise of a like authority is prohibited to the states, or where an authority is granted to the union with which a similar authority in the states would be utterly incompatible ; that the state courts have concurrent jurisdiction in those descriptions of causes of which they had previous cognizance ; that in cases which may grow out of and be peculiar to the constitution, the United States in the course of legislation .upon the objects intrusted to their discretion may commit the decision of causes arising upon a particular regulation to the federal courts solely, if such *449 a measnro should be deemed expedient, but that the state courts will be divested of no part of their primitive jurisdiction ^further than may relate to an appeal; and that [*379 in every case in which they were not expressly excluded by the future acts of the national legislature, they will of course take cognizance of the causes to which those acts may give birth. The judiciary power of every government, say they, looks beyond its own local or municipal laws, and in civil cases, lays hold of all subjects of litigation between parties within its jurisdiction ; though the causes of dispute are relative to the laws of the most distant part of the globe. When, in addition to this, we consider the state governments and the national government, as they truly are, in the light of kindred systems, and as parts of ono whole, the inference seems to bo conclusive that the state courts would have a concurrent jurisdiction in all cases arising under the laws of the Union, where it was not expressly prohibited. Fed. No. 82. This doctrine is substantially sanctioned by Justice Washington, speaking for the Supreme Court of the United States, in Houston v. Moore, 5 Wheat. 1; and he says, “ the state courts may exercise jurisdiction on cases authorized by the laws of the state, and not prohibited by the exclusive jurisdiction of the federal courts.”
I ask then, is the jurisdiction of this court over the present case any where prohibited ? Is there an exclusive jurisdiction any where given to the federal courts ? We are referred to the second section of the third article of the constitution, which declares that the judicial power shall extend to all cases in law and equity arising under this constitution, the laws of the United States, and treaties made, or which shall be made under their authority. But these words “ shall extend to,” are neither exclusive nor prohibitory. The clause contains a delegation of authority to the courts of the Union. But a delegation of authority is not of itself exclusive or prohibitory in cases where authority was previously exercised by the courts of the states. The words *450 are satisfied by a concurrent authority, and the jurisdiction-of the state courts in cases where it previously existed yet-remains. The legislation of the United States, under this article of the constitution, has given to it a practical exposition of high authority. Section 25, of the act of 1789, “ to establish the judicial courts of the United States,” declares that a final judgment or decree in any suit in the highest *380] court of law or equity of a state, *where is drawn in question the validity of a treaty, or statute of, or an authority exercised under the United States, and the decision is against their validity, or where is drawn in question the construction of any clause of the constitution, or of a treaty, or statute of, or commission held under the United States, and the decision is against the title, right, privilege or exemption specially set up or claimed by either party under such clause, treaty, statute or commission, may be re-examined and reversed or affirmed in the Supreme Court of the United States, upon a writ of error. How, it is manifest, that if the clause of the constitution above referred to, is exclusive or prohibitory, this enactment of Congress is a dead letter, and worse than useless; for many of the cases here declared to be re-examinable upon writ of error, could never occur in the state courts by reason of the constitutional prohibition and exclusion. The true and sound constitutional doctrine is stated by Chancellor Kent in his commentaries. “ State courts may, in the exercise of their ordinary, original and rightful jurisdiction, incidentally take cognizancé of cases arising under the constitution, the laws and treaties of the United States, yet to all these cases the judicial power of the United States extends by means of its appellate jurisdiction.” 1 Kent eom. 372, If, then, in the exercise of the ordinary, original and rightful jurisdiction of this court to redress by action of replevin the wrongful invasion of the property of one citizen by another, a question does incidentally arise under a law of the United States, or in respect to an authority exercised under the United States, it by no means follows that the case *451 is out of our jurisdiction. Nor can either laudable caution or lynx-eyed jealousy, or trembling fear, discern any danger to the Union, or its officers or authority, by the exercise of such jurisdiction in the state courts; since the appeal given, to the courts of the Union will always, and I rejoice that it is so, secure and protect against state errors, waywardness or abuse of power. But the truth is, that so far as the grounds of controversy are learned from the pleadings before us, the vessel was not seized for the purpose of being proceeded against under any law of the United States, nor will any question under any law of the United States arise, nor the authority of any officer of the United States, as such, be brought into debate. The real questions, so far as we can yet discover *them, are to depend on the laws of New [*381 Jersey, and the principles of the common law.
Another persuasive argument in support of the jurisdiction of the state courts in cases like the present, is, that without it, the injury of which the plaintiff complains, would ho remediless. It would be a proceeding, perhaps unprecedented, to ask from the court out of which the execution issued, an order upon, the marshal to restore the property, even if shewn to have been wrongfully taken. But if such order could be made, it would extend only to a return of the property. Satisfaction for unlawful caption or detention, could not bo had in a summary way, nor otherwise than by suit. A suit between these parties, and for the redress of such an injury, could not be sustained in the courts of the United States. The suit is of a civil nature at law, and the parties are citizens of the same state. If the present action of replevin, or an action of trespass for the alleged injury, had been instituted in the Circuit Court of the United States, as the declaration could have shewn no case within the cognizance, of that court, it must unavoidably have been dismissed. While the established reputation, the profound learning, and consummate prudence of the federal •courts, may reconcile us cheerfully to forego a jurisdiction *452 of a doubtful character, when full and ample justice may be-done there, we should long hesitate to deny the authority of the state courts, where the constitution and laws of the-United States have closed up the access to the courts of the Union.
It remains to be seen what light may be shed on this-interesting subject by some of the leading discussions and-adjudications in our judicial tribunals. In the case of Emanuel Roberts, a minor, enlisted in the service of the-United States, and brought by habeas corpus before the Court of Baltimore County, in Maryland, although the Chief Justice, Nicholson, refused in that particular instance to-interfere, yet he asserted the jurisdiction of the-court, and declared he would have exercised it in a case of a' more clear and aggravated character. In the matter of Ferguson, 9 John. 239, the allowance of an habeas corpus, in the case of an enlisted soldier, was refused by the Supreme Court of New York, but not for defect of-jurisdiction, on which point, although 0. J. Kent expressed himself strongly against the authority of the court, and chiefly because the courts of the *382] United *States had complete and perfect jurisdiction, the other judges gave no opinion, but justice Thompson, stated that a civil action for false imprisonment would in that case lie in the state court, although the legality of an enlistment under an act of Congress might be involved, and be incidentally decided. In a number of other cases the jurisdiction of the state courts to relieve by habeas corpus against unlawful detention by officers of the United States,, by pretext of authority of the United States, and under the color of acts of Congress by enlistment and otherwise, has been repeatedly asserted and exercised. In New York, 10-John. 328; in Pennsylvania, 5 Hall’s Law Journal, 301; in Maryland, ibid 486; and Serg. con. law 279, 280; in Virginia, ibid; in South Carolina, 5 Hall’s Law Journal, 497; in Massachusetts, 11 Mass. Rep. 68; in New Jersey, 2 South. 559.
*453 In Slocum v. Mayberry, 2 Wheat. 9, a revenue officer had seized and detained a vessel and cargo under the act of •Congress called the embargo act. The owners of the cargo brought their writ of replevin in the state court of Ehode Island. The officer pleaded to the jurisdiction and also in bar, a seizure and detention under the laws of the United •States. Judgment having been rendered in favor of the plaintiff, the cause was removed by writ of error into the Supreme Court of the United States. The attorney general, on behalf of the plaintiff in error, among other points insisted that the case being brought under the cognizance of the United States, and within the jurisdiction of their courts, by the just exercise of an authority by one of their officers, the state court had no right to interfere and •arrest the seizure by its process. The Supreme Court entered into an examination of the act of Congress; and being of opinion that it authorized a detention of the vessel only, and not of the cargo, affirmed the judgment of the state court. The Chief Justice said: “This being an action which takes the thing itself out of the possession of the officer, could certainly not be maintained, if by the act of Congress it was seized for the purpose of being proceeded against in the federal court.” We are to observe the qualified manner in which this rule is stated. He does not assert the broad position taken here, that the action is not maintainable because it takes the property out of the possession of an officer of the United States professing to act under the authority of the United States, but expressly limits it by saying, if it [*383 was seized for the purpose of being proceeded against in the federal court; that is to say, to ascertain whether- a forfeiture has been incurred ; a question which, by act of •Congress, belongs exclusively to the federal courts. Now, it bears no dispute that the property which is the subject of the present action, was not seized for the purpose of being proceeded against in the court of the United States, but for *454 the purpose of being sold to satisfy a debt for which a-judgment had been rendered. The court farther said, the-owner of the cargo might demand it from the officer in whose possession it was, that officer having no legal right to withhold it from him; and if withheld, he had a consequent right to appeal to the laws of his country for relief;, that the common law courts- of the United States could, afford him no relief, having no jurisdiction in the case.. “ But the act of Congress neither expressly nor by implication, forbids the state courts to take cognizance of suits instituted for property in possession of an officer of the United States not detained under some law of the United States; consequently, their jurisdiction remains. Had this action been brought for the vessel instead of the cargo, the-case would have been essentially different. The detention, would have been by virtue of an act of Congress, and the jurisdiction of the state court could not have been sustained. But the action having been brought for the cargo, to detain which the law gave no authority, it was triable in the state court.” How, in the case before us, whether the property belonged to, or was in the actual or constructive possession of, the plaintiff, so as to sustain replevin or trespass, did not turn upon any act of the-Congress of the United States; and the fact of property and possession in him being assumed, the cause is within the jurisdiction of this court upon the principles sanctioned by the Supreme Court. The chattel in the possession of the officer was not detained under any law of the United States. Consequently, our jurisdiction remains. The laws of the-United States gave no authority to the officer to detain the-vessel which the plaintiff claims; the action is, therefore,, triable in this court. In Martin vs. Mott, 12 Wheat. 19, in replevin brought in the Supreme Court of New York, the defendant avowed and justified the taking as a deputy marshal of the United States, by virtue of a certificate or *384] warrant directed to the *marshal to collect a fine- *455 imposed on the plaintiff as a delinquent militia-man by a court martial organized and convened and sitting under certain acts of Congress. The Supreme Court of the United States do not say the property was taken by an officer of the United States under process from a court of the United States and for a debt due to the United States, and the state court had therefore no jurisdiction ; but enter into an examination of the authority of the court martial, the regularity of their proceedings, and the legal sufficiency of the avowry; and sustaining them all, reversed the judgment of the state court, not for want of jurisdiction, but upon the merits. The case of Harris vs. Dennie, decided in the Supreme Court of the United States at the late January term, came there by writ of error directed to the Supreme Judicial Court of the state of Massachusetts. The original action was brought by the defendant in error against the plaintiff in error, for the taking of certain cases of silks which had been attached by the former, Dennie, as deputy sheriff of the county of Suffolk, upon certain writs of attachment from a state court in favor of creditors of the owners and consignees of the silks, and afterwards attached by the latter, Harris, the marshal of the district, by writs in favor of the United States issued from the District Court of Massachusetts. The silks had been recently imported into Boston, and were attached by Dennie on board of the vessel, and prior to their entry with the collector. The duties being unpaid, the silks were not delivered to the sheriff, but were, according to law, lodged in the government stores, where they remained until they were attached by the marshal. The Supreme Court of the United States held that the United States, having a lien on the goods for the payment of the duties accruing thereon, and being entitled to a virtual custody of them from the time of their arrival in port until the duties are paid or secured, any attachment by a state officer was an interference with such lien and right of custody, and being repugnant to the laws of the *456 United States, was void. And without doubt, an attachment at the suit of an individual, though served by an officer of the United States, would, for the same reason, have been condemned.
This case, it is manifest, assumes for the courts of the United States no more extensive or exclusive jurisdiction than the doctrine in Slocum vs. Mayberry; and rather *385] sustains than impugns *the jurisdiction of this court in the matter now before us.
Some argument was used by the defendant’s counsel to prove that the United States is a party in the present case and thereby to exclude” the interference of a state court. This ground I think is untenable. The officer in' this instance cannot be identified with the United States. If he misused his authority by taking the goods of a stranger under the execution, the legal responsibility must rest on himself alone. Neither he nor the plaintiff could have any •legal claim for satisfaction upon the United States; not even .if the truth be as alleged in the avowry, that he was-shewn the goods by the district attorney and by him directed to seize them.
• Upon the whole, I am unable to find in the constitution or laws of the United States, or in any decision of the Supreme Court of the Union, any exclusion of the jurisdiction of this court in the matter before us. I am therefore of opinion that judgment upon the demurrer be rendered for the plaintiff.
Judgment for the plaintiff.