## SUPREME COURT.

### JOHN TRACY, Jr., Plaintiff and Appellant, v. SAMUEL CORSE, Defendant and Respondent.

1. Where, under and pursuant to section 48 of the act of Congress of June 30, 1864 (13 *Statutes at Large, p.* 238), as amended by 9th section of the act of Congress, July 13, 1866 (14 *Statutes at Large, p.* 112), a proceeding was instituted and carried out, viz.: To sell a barge and a quantity of distilled spirits and utensils for making the same, as perishable, it is the duty of the purchaser seeking to avail himself of such title to make out by proof all the necessary steps required by that provision of the statute to give jurisdiction to the collector to sell.

2. The authority under those provisions of the acts of Congress to sell rests on, 1. The application by the collector of internal revenue to the assessor to examine the property seized, etc.

2. The assessor's examination and opinion that a sale is necessary.

3. The assessor's appraisal of the property sought to be sold as perishable.

4. The refusal of the owner of the property to give a bond.

5. The order to sell.

3. In the case at bar there were several errors, viz.: The assessor appraised the property seized, viz., a quantity of distilled spirits, a still and apparatus, and materials, implements, etc., and the barge "Franklin," in one lump, at $3,000, without distinguishing in the appraisal as to the value of the barge alone, so as to enable the owner of the barge to give a bond.

No proof was given of any notice to the owner of the property to give a bond. The recital in a letter written by the collector of the district to the assessor is not evidence of that fact.

The assessor did not indicate his opinion that a sale was necessary until after the time when, as alleged, the owner had neglected to give a bond. The court therefore *held*, on exceptions, the title of the purchaser under such a sale as invalid as to one claiming to be a purchaser on a mortgage sale under a power of sale contained in a mortgage in existence and duly recorded prior to the seizure by the collector of internal revenue.

4. The validity of the title of a purchaser under a sale under section 48, as

Tracy agt. Corse.

amended by section 9, of property seized, on the ground that it is perishable, does not in any way depend upon a subsequent decree entered in the U. S. District Court condemning the proceeds of such sale.

Because if a decree that the seizure and sale be confirmed helps to make the previous sale valid, then a contrary decree would make such sale invalid.

The result of such a principle would be that no person could safely purchase at such a sale.

The sale is not made by authority of the judgment, and, therefore, nothing which is decided by the judgment affects the validity of the sale.

5. If the barge had been held until the decree and then condemned and sold, the decree would have been the authority for the sale, and whatever was decided by the decree affecting the property sold under it would have been conclusive. But the barge in question was not sold under the decree, but under certain doings of the collector and assessor prior to the decree and prior even to any legal proceedings. Those subsequent proceedings may be conclusive as to the proceeds of the sale which are substituted for the barge, but they have nothing to do with the sale of the barge; that must stand on the validity of the acts of the collector and assessor.

6. The case of *Slocum* agt. *Maybury* (2 *Wheaton*, *U. S. S. C. R.*, *p.* 6) distinguished from the case at bar.

7. The doctrine of the law in this respect is that, from the necessity of the case, the property seized (wrongfully or rightfully) cannot be kept until final adjudication; that, therefore, it is necessary to sell it, not because it was rightfully seized, but because it cannot be kept. If, therefore, the party seizing takes the proper steps for a sale on such grounds, the purchaser has nothing to do with the subsequent decree and is in no way affected by it.

*General Term, First Department, July* 1873.
*Before* INGRAHAM, BRADY *and* LEARNED, *JJ,*

CUNNINGHAM & TOMPKINS, owners of a barge called the Franklin, for the consideration of $2,500, sold the said vessel to one Roach. Roach, simultaneously therewith, gave back two notes, dated May 11, 1868, for $1,000 each, payable, one at six months and one at twelve months after date (for part of the purchase-money), and, to secure said notes, executed a chattel mortgage on the said barge, which was recorded in the N. Y. custom-house on May 12, 1868.

This mortgage contained a provision that "in case of default

in payment, it should be lawful for the mortgagees to enter into and upon the said vessel, in any dock or waters she might be, and to take and carry her away and to sell and dispose of her at public or private sale, for the best price they might obtain. And the mortgagees were thereby authorized and empowered to become the purchaser or purchasers at such sale, and to execute and deliver the necessary bill or bills of sale to the purchaser or purchasers thereof," &c.

When the first of these notes became due it was unpaid, and on the 24th December, 1868, the mortgagees executed a power of attorney to a sheriff—the vessel at the time lying in Jersey waters—to seize and sell the said barge under the mortgage, because of the default in payment of the first of said notes.

Under the said mortgage and power the attorney took possession of the barge, advertised her for sale in the Hudson County Democrat, and sold her as she lay, at the foot of North Ninth street, in Jersey City, to the highest bidder, and Samuel Corse, the respondent, bought her for $1,650, cash, and thereupon the said attorney for the mortgagees executed a bill of sale to the respondent, reciting the mortgagees' proceedings and sale.

Mr. Corse took possession of the barge, and while so in possession of her the appellant brought an action of claim and delivery.

And on issues joined in that suit the cause below was tried.

On the trial, the jury found the value of the vessel to be $2,500, and damages for its detention, $549.30; and the justice ordered the verdict to be entered for the defendant, but judgment to be suspended to enable the exceptions to be heard in the first instance at the general term.

The appellant's case was founded on a title acquired by him under this state of facts viz. :

John Tracy, the appellant, bought the vessel in question on the 3d of August, 1868, at a sale made by Alexander Spaulding, U. S. collector of internal revenue, for the sum of

Tracy agt. Corse.

$1,000. The bill of sale by Spaulding, the collector, to Tracy, recited that on June 2d, 1868, he caused the barge Franklin (of 160 tons burthen) to be seized opposite Weehauken, in the North river, she being at that time fitted up for and actually engaged in the business of illicitly manufacturing spirits, in violation of internal revenue laws. That the said barge was, by order of said collector, moored to the dock, foot of 31st street, city of New York, and placed in charge of a keeper, and that the expense of keeping her was very great; and in consideration thereof, the said collector applied to Alexander J. Bleecker, assessor, on June 22d, 1868, to have said barge appraised. That on June 26th, 1868, said Bleecker appraised said barge. That on June 27th the collector notified the owner or owners of said barge to execute a bond equal to assessed value, on or before July 1st, 1868, which they neglected and refused to do. On July 9th, 1868, said collector applied by letter to Thomas B. Asten, successor in office to Anthony J. Bleecker, for an order to sell said barge; on the 10th July, 1868, said Asten, assessor of said district, issued an order authorizing said collector Spaulding to sell said barge, and he, said collector, duly advertised said barge at public auction, and on the 3d of August, 1868, to which day the sale was adjourned, it was sold to John Tracy, Jr., for $1,000.

*No proof was introduced on the trial below of the facts stated in such recital, other* than the correspondence between the collector and the assessor, and an information filed in the U. S. District Court, at the suit of the United States by the U. S. district attorney against $618.30, the proceeds of a quantity of distilled spirits, of one still and other distilling apparatus, of certain articles of raw materials, and certain tools, vessels, utensils, implements, instruments, &c., &c., and of the barge Franklin.

This information was filed on the 22d day of December, 1868, and process issued thereon against that money, returnable January 12th, 1869. Under that process the marshal

impounded the said $618.30, and made return on January 29th, 1869, which was some time after the respondent acquired his title, a final decree was entered on that information, adjudicating on and forfeiting the $618.30, and confirming said sale. But the respondent was no party to said suit, nor did the United States authorities, on that information, seize or hold in possession the "*rem*." viz.: the barge Franklin, which was in dispute, and all of said proceedings were unknown to the respondent.

A. H. DANA, *for plaintiff and appellant.*

D. McMAHON, *for defendant and respondent.*

LEARNED, *J.*—This is an action to recover the barge "Franklin." The plaintiff obtained possession by proceeding for claim and delivery in this action. On the trial the court ordered a verdict for the return of the barge. The case comes up on exceptions.

The plaintiff, to show his title to the barge, gave in evidence a bill of sale to him dated August 3, 1868, executed by Alexander Spaulding, collector of internal revenue. This recited that on the 2d day of June, 1868, he caused the barge to be seized, "she being at that time fitted up for and actually engaged in the business of illicitly manufacturing spirits in violation of the internal revenue laws; that the expense of keeping her was very great; that on the 22d day of June, 1868, he applied to the assessor to have the barge appraised; that on the 26th day of June, 1868, the assessor appraised the barge; that on 27th the collector notified the owners to execute a bond equal to the assessed value; that they neglected to do so; that the collector applied to the assessor for an order to sell; that the assessor issued such order, and that the collector had sold the barge to the plaintiff August 3d, 1868."

The plaintiff also gave in evidence the aforesaid application made June 22d, 1868, by the collector to the assessor, which

Tracy agt. Corse.

of states that the barge was engaged in the illicit manufacture spirits, and requesting, *under section* 48 of the internal revenue laws, an appraisal. It is important to notice, on this point, that that section only authorizes and applies to the seizure of goods, &c., on which taxes are imposed, which shall be found in the possession of persons for the purpose of being sold or removed with the design to avoid payment of taxes, and of raw materials in possession of persons intending to manufacture fraudulently.

Next the plaintiff gave in evidence the assessor's appraisal aforesaid, by which the assessor appraised the barge and contents at $3,000.

No evidence was given showing that the owner had been required or notified to give such bond. The recital in a letter of the collector, that such a notice had been given, is no evidence of the fact.

The plaintiff then gave in evidence the assessor's order to the collector to sell, in which he recites that the barge, with its contents, was appraised at $3,000, and recites that it was seized for being engaged in illicit distillation of spirits.

The plaintiff also gave in evidence certain proceedings in the United States Court, commenced December 22d, 1868, against "$618.30, being the proceeds of the barge Franklin," &c. These are stated to be the proceeds of a quantity of distilled spirits, certain raw materials, and a still, tools, and the barge Franklin. In these proceedings, the charge against the barge is not that she was used for illicit distillation, but that she was a vessel used for the removal, deposit or concealment of taxable goods. The marshal attached these proceeds of the sale December 22d, 1868, and returned that he had given due notice to all persons claiming the same.

On the 29th of January, 1869, no person appearing, the said proceeds were condemned, and it was further adjudged that the seizure and sale to Tracy be confirmed.

Now, it seems to be evident that the validity of Tracy's title cannot in any way depend upon the subsequent decree,

Tracy agt. Corse.

because if a decree that the seizure and sale be confirmed helps to make the previous sale valid, then a contrary decree would make such sale invalid. The result of such a principle would be that no person could safely purchase at such a sale. Because, if it were to depend on a future decree of a court whether the purchaser at such a sale was to obtain a good title or not, then it would follow that the property could not be sold. All that could be sold would be an uncertain right or chance, which a subsequent decree might make into a valid title, or might utterly destroy. In the common phrase, this would be selling a lawsuit.

This provision for a sale of perishable property is common. One instance is found in the Code, section 233, in case of attachment by a sheriff under an order. If the property is perishable, he may be authorized by order of the court to sell. But the title acquired under such sale would plainly not be affected by the final judgment in the action. The purchaser's title would be no better if the plaintiff should succeed, and no worse if he should fail. The sale is not made by authority of the judgment, and, therefore, nothing which is decided by the judgment affects the validity of the sale. It is important to observe this distinction. If property is levied upon under an attachment, and is held until final judgment, and is then sold under the judgment, then it is sold by the authority of the judgment, and the decisions of that judgment are binding. But if property is levied upon under an attachment and sold as perishable, then the validity of the sale depends on the attachment and the order of sale.

Thus, too, in the present case, if the barge had been held till the decree, and then condemned and sold, the decree would have been the authority for the sale, and whatever was decided by the decree affecting the property sold under it would have been conclusive. But this barge was not sold under the decree, but under certain doings of the collector and assessor prior to the decree, and prior even to any legal proceedings. Those subsequent proceedings may be conclu

Tracy agt. Corse.

sive as to the proceeds of the sale which are substituted for the barge, but they have nothing to do with the sale of the barge. That must stand on the validity of the acts of the collector and assessor.

To show that this must be so, let us suppose that the decree of the United States Court had been the reverse of what it was; that it had decided that' the proceeds of the property should not be condemned or forfeited. Would such a decree have destroyed Tracy's title? Clearly not. If, then, a decree releasing those proceeds from forfeiture and condemnation would not have taken away Tracy's title to the barge, it follows that a decree forfeiting and condemning the proceeds cannot make his title to the barge any better. If he obtained a good title, it was, by virtue of the proceedings, taken by the collector and assessor in respect to the barge prior to and at the time of the alleged sale to him.

There is nothing in this view which is in conflict with the doctrine of the exclusive jurisdiction of the United States courts in cases of seizure (*Slocum* agt. *Mayberry*, 2 *Wheat.*, 1). Admitting that the decree of that court is conclusive on the question whether or not the seizure was wrongful, would it be claimed that even in case of a wrongful seizure, if the property were perishable and were by proper proceedings sold for that reason, the purchaser would obtain no title? Such a principle could not be tolerated. The doctrine of the law in this respect is that, from *the necessity of the case*, the property seized (wrongfully or rightfully) cannot be kept till final adjudication; that, therefore, it is necessary to sell it, not because it was rightfully seized, but because it cannot be kept. If, therefore, the party seizing takes the proper steps for a sale on such grounds, the purchaser has nothing to do with the subsequent decree and is in no way affected by it.

Such a decree, therefore, is not to be considered in the case on the question of confirming the plaintiff's title. The proof, then, of the plaintiff's title to the barge is the conveyance of the collector. The plaintiff further offered to prove the fact

of the seizure, and that at the time a distillery was running on board; and he also gave in evidence the application of the collector, the appraisal and the order of the assessor.

It is necessary to inquire by what authority the collector made this sale. The plaintiff claims under section 48 of internal revenue act, July 13, 1866. This declares that when any property so seized cannot be kept without great expense, the collector * * * may apply to the assessor of the district to examine said property, and if in the opinion of the assessor it shall be necessary that said property should be sold to prevent such expense, he shall appraise the same, the owner thereupon shall have the property returned, upon giving bonds with such sureties as the assessor shall deem good, which bond shall be filed by the assessor. If said owner shall neglect or refuse to give said bond, the assessor shall issue to the collector an order to sell, and the collector shall advertise and sell in same manner as goods are sold on final execution.

It will be seen, then, that the authority to sell rests on several things. 1st. The application to the assessor. 2d. His examination and opinion that a sale is necessary. 3d. His appraisal. 4th. The owner's refusal to give a bond. 5th. The order to sell.

Now, in the present case it appears that the collector applied to the assessor June 22d, 1868, to appraise "the barge." On the 26th of June the assessor appraised the "property seized" at $3,000. This included a quantity of distilled spirits, a still and apparatus, raw materials, implements, &c. The assessor did not indicate his opinion that a sale was necessary, and while the expense of keeping the barge might be great, this could not, it would seem, be true of the other property seized. There is no evidence given on the trial that the owners were notified to give a bond. All that there is on that point is a letter written by the collector to the assessor, July 9th, stating that fact; nor does it appear that any evidence, except this letter, was ever given to the assessor showing that the owners had neglected or refused to give the bond.

Tracy agt. Corse.

Now, when we consider, as is shown above, that this sale of property, as perishable or as too expensive to be kept, if lawfully conducted, deprives the owner of his title, notwithstanding he has never been guilty of any wrong, he must, on all sound principles, be entitled to notice of the proceeding. It must be clearly kept in mind that such a sale as this is not made on the ground of forfeiture, but on the ground that the property is perishable, and as the proceedings are not before any court, but are conducted by the collector and assessor, the provisions of the statute must be strictly complied with.

In the present case there are several defects.

There was no appraisement of the barge. True, the barge and other property were appraised together. But this did not enable the owner of the barge to give a bond of the appraised value of the barge, thus to prevent the sale.

Next, there is no evidence of any notice to the owner requiring him to give such a bond.

Again, it will be found, on looking at the papers, that the assessor never decided that it was necessary to sell the barge until after the time when, as alleged, the owner had neglected to give the bond. There was nothing, then, at the time when the owner is alleged to have neglected to give the bond, which could have given him notice that this barge had been adjudged to be too expensive to keep, and that he must, therefore, give a bond.

If it be claimed that the assessor's order to sell is *quasi* judicial, it certainly should not be so highly judicial that it can avail to deprive an owner of his property without proof of notice to him and without any finding of the necessity of a sale, on which finding only, as a preliminary, could the owner be called on to protect his property from the sacrifice of a collector's auction sale.

Judgment should be entered on the verdict rendered for defendant.

Judge INGRAHAM concurred.

Judge BRADY dissented.

Judgment for defendant, with costs.