JABEZ C. HOWE & others *vs.* WATSON FREEMAN.

Replevin lies in a state court against a marshal of the United States for property attached
by him on mesne process from a United States court against a third person.

The directors of a railroad corporation, authorized by vote of its stockholders " to execute
a mortgage of the road with all its franchises," made a mortgage, which recited this vote,
and in terms conveyed their road, houses, lands and superstructure, and all their locomo-
tives, cars, tools and implements, " with all improvements made upon such property, and
all additions thereto, by adding new locomotives, cars and other things;" and the legisla-
ture afterwards ratified and confirmed their " proceedings whereby they conveyed agreea-
bly to the vote of the stockholders their railroad and property in mortgage." *Held*, that
cars subsequently purchased by the corporation were included in the mortgage, although
the mortgagees had not taken possession for foreclosure.

The Rev. Sts. *c*. 90, §§ 78, 79, and the *St*. of 1844, *c*. 148, requiring notice and demand by
a mortgagor of the amount due him before suing an attaching officer, do not apply to an
attachment by a United States marshal.

REPLEVIN of thirteen freight cars of the Vermont and Massa-
chusetts Railroad Company. The case was submitted to the
decision of the court upon the following facts :

On the 29th of June 1849 the Vermont and Massachusetts
Railroad Company " Voted, That the directors be and they here-
by are authorized to execute a mortgage of the road, with all its
franchises, to trustees selected by them, for the·purpose of secur-
ing the bonds of the corporation to be issued by the board."

On the 11th of July 1849 the directors executed a mortgage
for that purpose, which recited this vote, and purported to con-
vey the railroad of the corporation, " including not only the
entire road as located, but the stations, engine houses, shops,
woodhouses and other appendages, with all the lands thereto
belonging, and intended for the use and accommodation of the
said roads, and in any way essential to the same, including also
the entire superstructure of the said roads, as they are and as
they may be, if repaired or improved, together with all the run-
ning machinery, to wit, locomotives, cars of all descriptions,
tools and implements of all kinds, and whatever else is used
and employed in carrying on and working said roads, with all
improvements made upon such property, and all additions made
thereto, by adding new locomotives, cars and other things, in-

cluding all provisions made for repairs and improvements in any branch of the service," to John Davis, Robert G. Shaw and Jabez C. Howe, trustees, of whom the plaintiffs were duly appointed successors. This mortgage was recorded in the registries of deeds of the counties and offices of the clerks of the towns through which the railroad passed in this commonwealth

On the 25th of April 1850 the legislature of Massachusetts passed this act: " The proceedings of the Vermont and Massachusetts Railroad Company, whereby they conveyed, agreeably to a vote of the stockholders, passed on the twenty ninth day of June eighteen hundred and forty nine, their said railroad and property in mortgage to John Davis, Robert G. Shaw, and Jabez C. Howe, trustees for the bondholders in said mortgage mentioned, to secure the holders of said bonds the payment of the same, are hereby ratified and confirmed." *St.* 1850, *c.* 233.

The bonds, to secure which the mortgage was given, matured on the 1st of July 1855, and are unpaid. But the plaintiffs have never entered or taken possession under their mortgage, except by this replevin.

The freight cars replevied were purchased by the corporation in 1853 for use upon their road, and, while in their possession and use, were attached in Middlesex by the defendant as United States marshal, twelve in February 1856 and one on the 10th of March, on a writ from the circuit court of the United States, returnable at May term 1856, in an action of debt, brought by Selden F. White, a citizen of New Hampshire, upon five of these bonds, which was duly returned and entered in court, and is still pending.

The plaintiffs made a demand in writing upon the defendant for the amount of their debt after the attachment in February, but not after that in March.

This case was argued at Boston in January 1859.

*H. C. Hutchins*, for the plaintiffs.

*H. M. Parker & H. G. Parker*, for the defendant. 1. Replevin does not lie against a marshal of the United States for property attached as these cars were. Persons and property in the custody of the officers of a state court or of a federal court

are withdrawn from the process of courts of the other jurisdiction. *The Oliver Jordan,* 2 Curt. C. C. 414. *Cropper* v. *Coburn,* 2 Curt. C. C. 465. *Taylor* v. *The Royal Saxon,* 1 Wallace, Jr. 311. *Ex parte Robinson,* 6 McLean, 355. An attempt was early made to draw a distinction in favor of the United States in matters of admiralty jurisdiction. *Certain Logs of Mahogany,* 2 Sumner, 589. But even in admiralty the earlier doctrine has been overruled by the supreme court of the United States, in order to maintain the general doctrine now laid down. *Taylor* v. *Carryl,* 20 How. 583, affirming *S. C.* in 24 Penn. State R. 259. Chief Justice Taney, and the other judges who dissented in that case, did so solely on the ground of a necessity growing out of the peculiar character of admiralty jurisdiction under the Constitution of the United States ; and the chief justice strongly enforced the general doctrine. 20 How. 604, 605. [While this case was under advisement, the defendant also referred the court to *United States* v. *Booth,* 21 How. 506.]

The cases of trying, by *habeas corpus* from the state courts, questions of enlistment, and of forcible detention of citizens by the authorities of the United States without warrant, are clearly distinguishable — not being cases of persons or property held by legal process, or, in other words, in the hands of the law of the United States. Hurd on Habeas Corpus, 164–166, 202. *Commonwealth* v. *Harrison,* 11 Mass. 63. *Commonwealth* v. *Cushing,* 11 Mass. 67. *Commonwealth* v. *Chandler,* 11 Mass. 83. *Commonwealth* v. *Downes,* 24 Pick. 227. *Sims's case,* 7 Cush. 285.

In *Slocum* v. *Mayberry,* 2 Wheat. 1, property was not replevied from the custody of a United States marshal, which he asserted a right to hold; but simply property incidentally in his possession, to which he made no claim. *Bruen* v. *Ogden,* 6 Halst. 370, states the law where the attachment is a trespass, as where the goods of A. are taken in process against B., which is not this case. And *Hanna* v. *Steinberger,* 6 Blackf. 520, was not replevin, but trespass. There is no doubt that a marshal of the United States is liable in trespass or trover in the state courts, for any misfeasance in making an attachment.

2. The mortgage executed by the directors of the Vermont

and Massachusetts Railroad Company has no force or validity beyond what is authorized or conferred by the vote of the stock holders. Redfield on Railways, § 174 & cases cited. *Clay* v. *Rufford*, 5 DeGex & Sm. 768. The vote of June 29th 1849 authorized " a mortgage of the road with all its franchises," and nothing more. The *St.* of 1850, *c.* 233, did not enlarge the scope of the mortgage; but was in terms confined to " the pro-ceedings " of the company, conveying, " agreeably to a vote of the stockholders," " their railroad and property in mortgage " — which cannot extend to property not then theirs, and which by the ordinary rules of law would not pass. *Bourne* v. *Cabot*, 3 Met. 303. *Jones* v. *Richardson*, 10 Met. 481. *Moody* v. *Wright*, 13 Met. 17. *Hall* v. *Sullivan Railroad*, 21 Law Reporter, 140, 141. Redfield on Railways, § 235. *Willink* v. *Morris Canal & Banking Co.* 3 Green Ch. 377, does not raise the question as to personal property; and the doctrine of that case and of *Pierce* v. *Emery*, 32 N. H. 484, if rightly applied in equity, does not hold at law. There is no more reason why rolling stock should pass by a mortgage, than machinery in a cotton factory. *Vanderpoel* v. *Van Allen*, 10 Barb. 157. Redfield on Railways, § 235 & note. And compare the language of other similar statutes. *Sts.* 1850, *c.* 175, § 2; 1851, *c.* 60, § 2; 1856, *cc.* 68, 229; 1857, *c.* 162. At most, the word " franchise " cannot give the mortgagor any right to after acquired property until he has taken possession.

3. In any event, the defendant is entitled to judgment for the car taken on the 10th of March, because no demand or notice was given by the plaintiffs, as required by the Rev. Sts. *c.* 90, §§ 78, 79, and *St.* 1844, *c.* 148.

DEWEY, J. This is an action of replevin against the defend-ant, to regain the possession of certain railroad cars, attached by him as marshal of the United States, upon a writ issued from the circuit court of the United States in favor of Selden F. White, a citizen of New Hampshire, against the Vermont and Massachusetts Railroad Company. The action in the circuit court was instituted for the purpose of enforcing payment of certain bonds of the company, and the attachment was made for the ordinary purposes of an attachment in an action of contract.

48 *

1. It is contended on the part of the defendant, that as these cars were taken by an officer of the United States under a process from the United States Circuit Court, no party, under a claim of property in himself, however well founded, can interfere with such attachment by any process from a state court. We accord entirely to the doctrine, that as to property proceeded against or made the subject of judicial inquiry in the courts of the United States, those courts having taken jurisdiction thereof, we are not to interfere. But these articles were not seized for the purpose of being proceeded against in the courts of the United States. They were not the subjects of the case then to be tried, either as goods alleged to be forfeited under the revenue laws, or as property that might be the subject of a libel *in rem*, or for any other liability upon which judgment might be rendered against the property seized. The process from the United States Court was that usually issued for the recovery of a debt, unaccompanied by any lien or charge upon these goods, except that resulting from an attachment to secure an alleged debt.

The case before the United States Court was the question of the liability of the Vermont and Massachusetts Railroad Company upon certain bonds described in the action, and the decision of the matter in issue in that case would not be affected by the possession or want of possession of these cars by the marshal. These articles were not therefore in any sense made a subject of the jurisdiction of the courts of the United States. The only process to the marshal was one commanding him to attach the property of the Vermont and Massachusetts Railroad Company, and not a warrant to seize these particular cars. The question of property in these cars is an entirely collateral question, and one which the court of the United States could not hear and decide in the action pending before it. If they were the cars of the plaintiffs, they were not taken in pursuance of any precept of the United States Court, giving it its broadest latitude, as that precept only commanded the marshal to take the goods of the Vermont and Massachusetts Railroad Company.

Chancellor Kent, in his Commentaries, after stating the broad principle, that no state tribunal can interfere with seizures of property by revenue officers, under the laws of the United States, nor interrupt by replevin, injunction or otherwise, the exercise of the authority of federal officers, adds : " But if there be no jurisdiction in the instance in which it is asserted, as if a marshal of the United States, under a process in favor of the United States against A., should seize the property of B., then the State courts have jurisdiction to protect the person and property so illegally invaded." 1 Kent Com. (6th ed.) 410.

The case of *Slocum* v. *Mayberry*, 2 Wheat. 9, seems to assume the like doctrine, as the true one applicable to questions of jurisdiction. While it holds that no writ of replevin or other process would lie against the marshal, to take property out of his hands, that was seized by him for breach of the revenue laws, or to be proceeded against by proceedings *in rem* for forfeiture or liability ; it distinctly recognizes the principle that replevin will lie against a marshal of the United States, to take out of his possession property not legally the subject of such proceedings *in rem.* Hence a cargo of goods, taken by him on a process against the ship for an alleged violation of the embargo laws, was held the subject of replevin by a writ issued from a state court, such cargo not being liable to seizure by the marshal for the causes alleged for seizing and detaining the vessel.

The defendant's counsel rely with much confidence upon various decisions of the courts of the United States, and particularly upon the case of *Taylor* v. *Carryl*, 20 How. 583. That case is one of much interest, and the views of the court upon the question there raised are presented with great ability and learning in the opinion given by Mr. Justice Campbell, speaking for five of the members of the court, and in the dissenting opinion given by Chief Justice Taney in behalf of the remaining four members. But it was not the present case. In the language of Chief Justice Taney, it was " merely a question upon the relative powers of a court of admiralty and a court of common law, in the case of an admitted maritime lien." 20 How. 601. The plaintiff in replevin in that case claimed under a sale

ordered by the supreme court of Pennsylvania, under a statute of that state, where property was attached by a process against a foreign debtor having property within that state; and the defendant claimed title under a sale by a marshal of the United States District Court, under an order proceeding from that court in a process instituted therein, subsequently to the attachment in the state court against the ship, in behalf of certain seamen for their wages; and the question was, which was the better title. Incidentally the question of conflicting jurisdiction between a state court and the district court of the United States was somewhat discussed. In maintaining the jurisdiction of the state court, because prior in point of time, the court say : " Property once levied on remains in the custody of the law, and is not to be taken by another execution in the hands of a different officer, and especially by an officer acting under another jurisdiction." 20 How. 595. Again : " The court of chancery does not allow the possession of its receiver, sequestrator, committee or custodee, to be disturbed by a party, whether claiming by a title paramount or under the right which they were appointed to protect." 20 How. 594.

As the law is held in Massachusetts, this custody of the law, arising from possession by attachment or levy of execution, has no such sacredness of character as prevents the true owner from asserting his right of property by writ of replevin, for a tortious taking of property belonging to one not the debtor. Actions of replevin are of daily occurrence against officers thus seizing property, and against assignees or receivers of property of insolvent debtors ; and with us the doctrine of not interfering with goods in the custody of the law has no application to the case of a third person asserting a paramount right of property in the article seized.

The cases commented upon in *Taylor* v. *Carryl,* when closely examined, it is believed will not be found to be similar to the present. In *Peck* v. *Jenness,* 7 How. 612, the great struggle was on the question whether an attachment on mesne process created a lien protected by the proviso of the second section of the bankrupt act of 1841, and whether the district court of the

United States could interfere with the proceedings of a state court thereon.

The cases of *Williams* v. *Benedict*, 8 How. 107, *Pulliam* v. *Osborne*, 17 How. 471, and *Hagan* v. *Lucas*, 10 Pet. 400, were cases arising between judgment creditors, or between such creditors and administrators of insolvent estates, involving priority of liens, or rights to sell on executions all of which were against the same debtor. They do not involve the question of the right of an officer of a court of the United States, under an attachment, to hold property of a stranger to the suit, exempt from liability to have the same taken from him by a process of replevin; but merely the priority of right of different creditors, as to the property of their common debtor. That question might arise as well in the court of the State, between two attaching creditors or claimants there, as in the case of two suits, one of which was in the court of the United States. That this attachment by the marshal was not a proceeding *in rem*, is clearly stated by Chief Justice Taney in *Taylor* v. *Carryl*. It is to be borne in mind that the only claim of the marshal in the present case is under the common law process of attachment upon an action of contract to recover payment of a bond. The suit in which the ship was attached and sold by the sheriff, in the case of *Taylor* v. *Carryl*, was of like character. Of that attachment, the chief justice says : " The common law process was not and could not be a proceeding *in rem*, to charge the ship with the debt, for the creditor has no lien upon her, and the court had no jurisdiction over anything but the owner's residuum." Again : " The whole ship could not be sold by the officer, so as to convey an absolute right of property to the purchaser." 20 How. 602. Nor could the sale here by the marshal, if one had been made on an execution against the debtor, pass the property of the present plaintiff. A sale on execution has no such effect as to destroy the right of property in a third person. It is only a sale of the debtor's interest therein, that passes to the purchaser.

In *The Oliver Jordan*, 2 Curt. C. C. 414, both parties were attempting to enforce the collection of their debts against the

same debtor, who was the acknowledged owner of the property; and the court held, that the vessel having been attached by a process from the state court, while the same was in the custody of the sheriff under said attachment, the marshal could not, under a process from the district court of the United States to enforce the claim of a material man, take the same from the possession of the sheriff. But that was not the case of a third party, setting up an independent paramount title as general owner of the property. The material man could sustain no action of replevin for this property, independently of the objection of priority of proceeding by the other party.

That the remark of Mr. Justice Curtis in that case, that " persons and property in the custody of the law of the United States, are not subject to any state process," was only applicable to the case of proceedings by attachment by different creditors against the same debtor, seeking to levy upon his acknowledged property, and not to the case of an attachment by an officer of the property of B., on a process directing him to attach the goods of A., is quite obvious from the case, in the same volume, of *Cropper* v. *Coburn*, 2 Curt. C. C. 469, in which it was said that such taking of the goods of another person would not be a proceeding of the court issuing the process, but a mere trespass, for which any appropriate remedy might be instantly sought in any court having jurisdiction; and the court cited, as direct authority for state jurisdiction in such case, the case of *Slocum* v. *Mayberry*, 2 Wheat. 1, and also the language of Chancellor Kent, in his Commentaries, which has been already given, declaring that the state court would in such case have jurisdiction to protect property so illegally invaded.

We were also referred by the counsel for the defendant, to the case of *United States* v. *Booth*, decided by the supreme court of the United States at December term 1859, as a case bearing strongly upon the case now before us. 21 How. 506. The perusal of it has failed to satisfy us that it furnishes any authority for maintaining this defence. *Booth's case* was on *habeas corpus*, and a conflict between the State authority and

that of the United States Court, as to the custody of the person the subject of the *habeas corpus.* It involved no such question as that we have to settle in the present case.

Before dismissing this part of the case, it may be proper fur-- ther to suggest, that if a state court cannot, in a case like the present, issue a writ of replevin, then the plaintiffs are remediless in this respect. Both plaintiffs and defendant are citizens of Massachusetts, and the plaintiffs therefore cannot bring their action in the United States Court. If it be replied to this, that they may have an action of trover in the state court for the recovery of damages ; to this it may be rejoined, that it may be no adequate remedy for articles which the owner may wish to retain specifically. While the marshal may be equally annoyed by being brought before the courts of the state to try the same question of right of property by an action of trespass or trover, yet the full remedy of a writ of replevin is denied, under the theory that such a rule of law is necessary to prevent a conflict of jurisdiction. Such a rule has not been found necessary in our state courts to protect articles in the custody of law, under an attachment on mesne process, or an execution ; but we allow the free exercise of the writ of replevin in favor of third persons, claiming the property thus taken. We see no reason why the same principle should not apply to goods attached by the mar- shal on a common law process issuing out of the circuit court of the United States. In neither case does it interfere with the full jurisdiction of the court over the subject of the action insti- tuted in such court.

2. The next inquiry is, whether the plaintiffs can under their mortgage hold as against an attaching creditor the articles of personal property, the subject of the present action of replevin.

The objections taken to the plaintiffs' right of property in the cars are founded, first, upon the assumption that the mortgage of them by the directors was wholly unauthorized by the cor- poration ; and secondly, that if the mortgage was valid as to all existing personal property, it cannot avail as to property ac- quired subsequently to the execution of the mortgage.

As to the first of these objections, if the case turned solely

upon the strict construction of the language used in the vote of the corporation of the 29th of June 1849, it might be difficult to say, with entire certainty, what was embraced in this vote. It was a vote, " authorizing the directors to execute a mortgage of the road with all its franchises." The terms were very sweeping, and indicated a purpose to execute a mortgage of the broadest character. Had the term "franchise" been used, it would have been inartificially used for this purpose, as its technical meaning would indicate merely the conveyance of the right to be a body corporate with perpetual succession, rather than be descriptive of the conveyance of the property of the corporation. But the real purpose was, we must suppose, beyond that of using the term franchise in this narrow sense. It was not " its franchise," but " the road and all its franchises," that were authorized by the corporation to be mortgaged. Acting under this authority, eleven days afterwards the directors executed the mortgage to the plaintiffs, which was amply broad enough in its terms to embrace all the running machinery, and all the cars then in use, and also all additions made thereto, by adding new locomotives, cars, &c.

In the view we have taken of the present case, it is unnecessary to decide what would have been the effect of the mortgage had its validity depended merely upon the instrument thus executed by the directors. After the execution of this mortgage, and six years previous to the taking of the property by the defendant, this same mortgage was ratified and confirmed by a legislative act. *St.* 1850, *c.* 233. It was ratified and confirmed, as " the proceedings of the Vermont and Massachusetts Railroad Company, whereby they conveyed, agreeably to the vote of the stockholders, their railroad and property in mortgage." This act, it may be supposed, was passed with the knowledge and concurrence, and upon the application of the railroad company, or those legally representing them. Its authority has never been questioned by the corporation. We are satisfied that the legislature intended to confirm and sanction this identical mortgage in all its provisions, as a legal act on the part of the railroad company, and thus to give greater security to the

bondholders, and incidentally to benefit the company, by remov-
ing all doubts as to the validity of the mortgage and the secu-
rity in the hands of the trustees. To the suggestion that the
purpose of this statute was merely to sanction a mortgage of
the technical franchise to be a body corporate, it may be an-
swered that the language of the statute is singularly inappro-
priate for that object, as it wholly omits the word " franchise,"
and ratifies and confirms the mortgage of " the road and prop-
erty " of the corporation.

This legislative act obviates the second objection to the right
to maintain the action — that a mortgage will not pass chattels
or personal property not in existence, or not owned by the mort-
gagor, at the date of the mortgage. The legal principles, stated
by the defendant on this point, are entirely correct in reference
to ordinary mortgages, and would have been fatal to this action,
if no legislative authority had intervened, ratifying and confirm-
ing this particular mortgage. But the statute did thus intervene,
confirming the mortgage, and thus giving effect to all parts of it,
including the provision as to after acquired machinery and cars.
This mortgage was duly recorded, and thus, by means of the
record and the statute, the lien thereby created was duly notified
to all persons having business relations with the Vermont and
Massachusetts Railroad Company.

The general question which we have been considering received
a very full consideration in the case of *Peirce* v. *Emery*, 32 N.
H. 485, and the court of that state came to a similar result, as
to the validity of a mortgage made by the Portsmouth and Con-
cord Railroad Company.

3. A special ground of defence is urged in relation to the car
taken by the defendant on the 10th of March. It is said that,
as respects this car, no demand or notice was given by the plain-
tiff, as required by the statutes of this commonwealth in case of
an attachment of mortgaged personal property.

It is conceded that with regard to all the cars previously
taken, due notice had been given, agreeably to the statute, of
the existence of the mortgage, amount due, &c.; but the defend-
ant and the creditor whom he represents wholly repudiated the

claim, and neither paid the same nor surrendered the property. To all practical purposes, therefore, it is quite obvious that the defendant had all the notice that the statute intended to give him, as it was the same mortgage that covered the last car, as the cars previously attached. But irrespective of this, it is a sufficient answer to this objection as to the car last attached, that our statute requiring a demand and notice of the amount of the debt or liability by the mortgagee, in case of an attachment of mortgaged goods, applies only to attachments by state officers, and not to attachments made or processes issuing from the courts of the United States. The position taken and held by the courts of the United States is that, by the acts of congress, the state process of attachment, existing at the time when the act as to the national courts passed, was adopted with all the rights and incidents then attached thereto; and that no subsequent change of the law of attachment by a state legislature, does or can *proprio vigore* have any effect upon the processes of the United States Courts. On the contrary, it is held, that the rights of attachment and incidents thereto remain, as respects the courts of the United States, the same as they were at the beginning, unless under the authority of some act of the congress of the United States, such subsequent state legislation modifying their former statutes has been recognized and sanctioned. *Springer* v. *Foster*, 2 Story R. 387. *Wyman* v. *Southard*, 10 Wheat. 1. *United States Bank* v. *Halstead*, 10 Wheat. 51. *In re Freeman*, 2 Curt. C. C. 491.

The right of the plaintiffs is therefore well maintained, both as to the right of property and possession in all the articles taken and claimed by their writ of replevin. The right to take this property from the marshal by a writ of replevin under the facts proved is also well shown. The result is that

*Judgment must be entered for the plaintiff.**

---

* This judgment was reversed, on error, by the supreme court of the United States, upon the point of jurisdiction. *Freeman* v. *Howe*, 24 How. 450.