

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0552-18

### EX PARTE JORDAN BARTLETT JONES, Appellant

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE TWELFTH COURT OF APPEALS
### SMITH COUNTY

*Per curiam.* YEARY, JJ., filed a concurring opinion. KELLER, P.J., concurred.

### O P I N I O N

There does not seem to be a dispute that the classic "revenge porn" scenario—two people take intimate sexual photographs, and one person decides to post them on the Internet without the consent of the other—could be a viable set of facts to support the prosecution of the person who disseminates the pictures. But what about when someone who wasn't involved in that encounter sees the pictures and shares them with other people? Can the State prosecute that person without violating the First Amendment? That is the difficulty with analyzing Section 21.16(b) of the Penal Code, at least as it

existed in 2017.[1] But, interpreting Section 21.16(b) as alleged in the indictment, we hold that the statute only covers the intentional disclosure of sexually explicit material by third parties when that third party (1) obtained the material under circumstances in which the depicted person had a reasonable expectation that the image would remain private; (2) knew or was aware of but consciously disregarded a substantial and unjustifiable risk that he did not have effective consent of the depicted person; and (3) knowingly or recklessly identified the depicted person and caused that person harm through the disclosure. Properly construed, the statute does not violate the First Amendment. We reverse the court of appeals.

## Background

The State charged Appellant with unlawful disclosure of intimate visual material under that statute, commonly known as the "revenge porn" statute. Appellant filed a pre-trial Application for Writ of Habeas Corpus, arguing that Section 21.16(b) is facially invalid under the First Amendment. The trial judge denied relief, but the court of appeals reversed, holding the law was a content-based restriction that failed strict scrutiny and was overbroad under the First Amendment.[2]

The court of appeals first determined that free-speech protections of the First

---

[1] In response to the court of appeals opinion in this case, our Legislature amended Section 21.16. *See* Acts 2017, 85th Leg., R.S., ch. 858 (H.B. 2552), § 16(b), eff. Sept. 1, 2017. This case involves an interpretation of the previous version of the statute.

[2] *Ex parte Jones*, ___ S.W.3d ___, 2018 WL 2228888, at *5–7 (Tex. App.—Tyler May 16, 2018).

Amendment were implicated in this case.[3] It explained that Section 21.16(b) proscribes the disclosure of certain visual material, including any film, photograph, or videotape in various formats.[4] It stated that this Court has previously concluded that photographs and visual recordings are inherently expressive and noted that the First Amendment applies to the distribution of such expressive media in the same way it applies to their creation.[5]

The court then determined that the statute regulates speech in a content-based manner.[6] It reasoned that the statute does not penalize all intentional disclosure of visual material depicting another person; it penalizes only a subset of disclosed images: those which depict another person with the person's intimate parts exposed or engaged in sexual conduct.[7] Consequently, as the State conceded at oral argument before the court of appeals, Section 21.16(b) was subject to strict scrutiny analysis.[8]

Next, the court rejected the State's argument that any visual material disclosed under Section 21.16(b) is contextually obscene and, therefore, constitutes unprotected speech.[9] The court concluded that Section 21.16(b) does not include language that would

---

[3] *Id*. at *3.

[4] *Id.*

[5] *Id.*

[6] *Id.* at *4.

[7] *Id.*

[8] *Id.*

[9] *Id.*

permit a trier of fact to determine that the visual material disclosed is obscene.[10]  It further reasoned that adopting the State's obscene-speech argument would make the statute wholly redundant in light of Texas's obscenity statutes.[11]

The court then determined that Section 21.16(b) did not survive strict scrutiny.[12] While assuming a compelling governmental interest in protecting privacy, it nevertheless found that Section 21.16(b) did not use the least restrictive means of achieving that interest.[13]  The court took issue with the disjunctive structure of Section 21.16(b)(2), noting that it would allow prosecution of someone having no knowledge of the circumstances surrounding the creation of the material or the privacy interest of the person depicted.[14]  This is true even if the disclosing person did not intend to cause harm to the depicted person[15] or did not identify the depicted person.[16]  Consequently, the court determined that the statute is an invalid content-based restriction in violation of the First Amendment.[17]

Lastly, the court concluded that Section 21.16(b) is unconstitutionally overbroad

---

[10] *Id.*

[11] *Id.*

[12] *Id.* at *5–7.

[13] *Id.*

[14] *Id.* at *6.

[15] *Id.* at *6, n.14 (citing TEX. PENAL CODE § 21.16(b)(1) (West 2017)).

[16] *Id.* at *6, n.15 (citing TEX. PENAL CODE § 21.16(b)(4) (West 2017)).

[17] *Id*. at *7.

because it violates the rights of too many third parties by restricting more speech than the Constitution permits.[18] According to the court, the criminal prohibition of Section 21.16(b) applies to any person who discloses visual material depicting another person's intimate parts or a person engaged in sexual conduct, even when the disclosing person has no knowledge or reason to know the circumstances surrounding the material's creation.[19] Furthermore, the court concluded that the lack of a specific intent to harm and the lack of a culpable mental state regarding the identity of the depicted person added to the broad reach of the statute.[20]

We granted review to consider three questions posed by the State. First, is Section 21.16(b) a content-based restriction on speech that is subject to strict scrutiny? Second, did the court of appeals improperly rely upon a theory of liability not charged in the indictment when conducting its strict-scrutiny analysis? Third, and finally, is Section 21.16(b) facially unconstitutional? Based on our answers to these questions, we reverse the judgment of the court of appeals.

### Standard of Review

Whether a statute is constitutional is a question of law that we review *de novo*.[21] The burden normally rests upon the person challenging the statute to establish its

---

[18] *Id.* at *7–8. Although it questioned the need to address overbreadth because it had found the statute to be an invalid content-based restriction, the court did so "in an abundance of caution." *Id.* at *7.

[19] *Id.*

[20] *Id.*

[21] *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App 2013).

unconstitutionality.[22]  When reviewing the constitutionality of a statute, we usually begin with the presumption that the statute is valid and that the Legislature has not acted unreasonably or arbitrarily in enacting the statute.[23]  We must seek to interpret a statute such that its constitutionality is supported and upheld.[24]  We must make every reasonable presumption in favor of the statute's constitutionality, unless the contrary is clearly shown.[25]

To that end, we have a duty to employ a reasonable narrowing construction in order to avoid a constitutional violation.[26]  However, such a construction should be employed only if the statute is readily susceptible to one.[27]  If a statute is not readily subject to a narrowing construction, we may not rewrite the statute because such a rewriting would constitute a serious invasion of the legislative domain and would sharply diminish the Legislature's incentive to draft a narrowly tailored statute in the first place.[28]  We act in accordance with our usual rules of statutory construction and construe a statute

---

[22] *Peraza v. State*, 467 S.W.3d 508, 514 (Tex. Crim. App. 2015) (citing *Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978)).

[23] *Id.*

[24] *Peraza*, 467 S.W.3d at 514 (citing *Luquis v. State*, 72 S.W.3d 355, 365 n.26 (Tex. Crim. App. 2002)).

[25] *Granviel*, 561 S.W.2d at 511; *see* TEX. GOV'T CODE § 311.021 (2013) (stating that courts presume "compliance" with the Texas and United States Constitutions).

[26] *See State v. Johnson,* 475 S.W.3d 860, 872 (Tex. Crim. App. 2015) (citing *Ex parte Thompson*, 442 S.W.3d 325, 339 (Tex. Crim. App. 2014)).

[27] *Id.*

[28] *Id.*

in accordance with unambiguous language absent a finding of absurd results.[29]

## Analysis

Appellant was charged under the 2017 version of Penal Code Section 21.16(b). It specified that:

> (b) A person commits an offense if:
>
> (1) without the effective consent of the depicted person, the person intentionally discloses visual material depicting another person with the person's intimate parts exposed or engaged in sexual conduct;
>
> (2) the visual material was obtained by the person or created under circumstances in which the depicted person had a reasonable expectation that the visual material would remain private;
>
> (3) the disclosure of the visual material causes harm to the depicted person; and
>
> (4) the disclosure of the visual material reveals the identity of the depicted person in any manner, including through:
>
> > (A) any accompanying or subsequent information or material related to the visual material; or
> >
> > (B) information or material provided by a third party in response to the disclosure of the visual material.[30]

"Intimate parts" means "the naked genitals, pubic area, anus, buttocks, or female nipple of a person."[31] "Sexual conduct" means "sexual contact, actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, or

---

[29] *Id.* (citing *Thompson*, 442 S.W.3d at 339–40).

[30] TEX. PENAL CODE § 21.16(b) (West 2017).

[31] *Id.* § 21.16(a)(1).

sadomasochistic abuse."[32] "Visual material" includes "any film, photograph, videotape, negative, or slide or any photographic reproduction that contains or incorporates in any manner any film, photograph, videotape, negative, or slide;" or "any disk, diskette, or other physical medium that allows an image to be displayed on a computer or other video screen and any image transmitted to a computer or other video screen by telephone line, cable, satellite transmission, or other method."[33]

## I. Strict-scrutiny analysis requires analysis of the manner and means charged in the indictment.

As will be explained in greater detail below, Appellant faces an accusation under Section 21.16(b) that implicates some parts of the statute and not others. In holding the statute facially invalid under the First Amendment, the court of appeals construed parts of the statute that are not implicated by the charging instrument.[34] The State argues that review should be limited to the offense charged. We agree.

Judicial restraint counsels courts against anticipating a constitutional issue before it is necessary to decide it or formulating a constitutional rule broader than required by the facts before it.[35] Furthermore, "it is incumbent upon an accused to show that he was convicted or charged under that portion of the statute the constitutionality of which he

---

[32] *Id.* § 21.16(a)(3).

[33] *Id.* § 21.16(a)(5).

[34] *See Jones*, 2018 WL 2228888, at *6–7.

[35] *See United States v. Grace*, 461 U.S. 171, 175 (1983) (limiting review of statute's constitutionality under First Amendment to the part of the statute under which defendants were charged).

questions."[36] This limit helps us avoid issuing advisory opinions.[37] And it encourages upholding the constitutionality of statutes when reasonably possible.[38]

We adhered to that limit in *Ex parte Lo* when we only construed the specific subsection of the statute that the defendant alleged was unconstitutional, i.e., communication with a minor rather than solicitation of a minor.[39] Then, in *Thompson*, we construed only the part of the statute under which the defendant had been charged, i.e., taking photographs as opposed to broadcasting or transmitting them.[40] Similarly, in *Ex parte Perry*, we limited our review of the statute to "the definition alleged in the indictment [which involved] activity . . . distinct from the other subsections in the definition" of the term at issue.[41]

Section 21.16(b) defines the commission of the offense in distinct ways, and those distinctions affect the analysis of the statute's facial validity. The court of appeals

---

[36] *Ex parte Usener*, 391 S.W.2d 735, 736 (Tex. Crim. App. 1965).

[37] *See id.*; *Armstrong v. State*, 805 S.W.2d 791, 794 (Tex. Crim. App. 1991).

[38] *See Thompson*, 442 S.W.3d at 339.

[39] *Lo*, 424 S.W.3d at 13–14, 16–17.

[40] *Thompson*, 442 S.W.3d at 330, 351.

[41] 483 S.W.3d 884, 904 (Tex. Crim. App. 2016). To the extent that our review in *Lo* was more expansive than in *Thompson* or *Perry*, that was because the element at issue there—"sexually explicit"—was central to the subsection under which Lo was charged and not merely to the subparagraph that underlay his charging instrument. Unlike the situation in *Perry*, where the definition used in the indictment was just one of several statutory definitions, there was only one statutory definition of "sexually explicit" in Section 33.021(a), and it applied to both possible ways of committing the crime under subsection (b). *Compare Perry*, 483 S.W.3d at 904, *with Lo*, 424 S.W.3d at 17. Subsection (c), the "solicitation" means, was not alleged, so the Court did not analyze that portion of the statute. *Lo*, 424 S.W.3d at 17 (noting that Section 33.021(c) "is not at issue in this case").

recognized those distinctions and their significance.[42] Nevertheless, it declared the whole statute an invalid content-based restriction of the First Amendment.[43] Because of those significant distinctions, we conclude that the court of appeals erred in reviewing the whole statute, and we will limit our review to those parts of it implicated by the charging instrument pending against Appellant.

The charging instrument alleges that Appellant did:

intentionally or knowingly without the effective consent of [A.B.], hereafter styled the complainant, intentionally disclose visual material, namely, photograph, depicting the complainant with her naked genitals exposed, and the visual material was obtained by the defendant under circumstances in which the complainant had a reasonable expectation of privacy that the visual material would remain private, and the disclosure of the visual material caused harm to the complainant, namely, embarrassment, and the disclosure of the visual material revealed the identity of the complainant, through accompanying or subsequent information provided by defendant[.]

The indictment alleges that Appellant obtained, rather than created, a prohibited photograph under circumstances in which the depicted person in the photograph had a reasonable expectation that the photograph would remain private. So, Appellant cannot be convicted under this accusation based solely on someone else having created the photograph under circumstances that were unknown to Appellant. It also alleges that Appellant revealed the identity of the depicted person through his disclosure, as opposed to the identity being revealed through someone else's disclosure. So, Appellant cannot

---

[42] *See Jones*, 2018 WL 2228888, at *5–6.

[43] *Id.* at *7.

be convicted under this accusation for a third party's disclosure. In these respects, this accusation avoids at least some of the parts of the statute that the court of appeals considered most troubling.[44] But the indictment is broader than the State realizes. It only alleges that Appellant disclosed the picture and revealed the identity; therefore, presumably a third party could also see the person and identify her. Nevertheless, as we explain later on, Appellant cannot be convicted for disclosure of a photograph whose subject was identified by a third party.

Simply put, Appellant raises a constitutional challenge to the terms of the statute, as well as a facial First Amendment challenge based on overbreadth. With regards to the former, our strict-scrutiny analysis focuses on whether prosecution of the charged conduct violates the First Amendment. With the charged statutory elements of the offense in mind, we first consider whether the statute at issue is content based and whether this application of the statute survives strict scrutiny. We then analyze whether the statute nevertheless violates the First Amendment under the overbreath doctrine.

## II. Section 21.16(b) is a content-based restriction on speech that is subject to and satisfies strict scrutiny.

### A. Classifying the Statute

The First Amendment protects, among other things, the freedom of speech.[45] The First Amendment right to freedom of speech applies to the states by virtue of the

---

[44] *See Jones*, 2018 WL 2228888, at *5–6.

[45] U.S. CONST. amend. I ("Congress shall make no law . . . abridging the freedom of speech.").

Fourteenth Amendment.[46]  The First Amendment generally prohibits laws that "restrict expression because of its message, its ideas, its subject matter, or its content."[47]  Such laws are content based[48] and presumptively invalid.[49]  Consequently, when a litigant challenges a content-based restriction under the First Amendment, the government bears the burden to rebut that presumption by showing its constitutionality.[50]

In *Reed v. Town of Gilbert, Arizona*, the Supreme Court laid out a "commonsense" understanding of what it means for a speech regulation to be facially content based: "Government regulation is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed."[51]  If it is necessary to look at the content of the speech in question to decide if the speaker violated the law, then the regulation is content based.[52]  For example, a statute that prohibits an adult from communicating with a minor via the internet is content neutral, but a statute that prohibits

---

[46] *W. Va. Bd. of Educ.  v. Barnette*, 319 U.S. 624, 638–39 (1943).

[47] *Ashcroft v. Am. Civil Liberties Union*, 535 U.S. 564, 573 (2002) (internal quotation marks omitted).

[48] *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015); *Thompson*, 442 S.W.3d at 348 (citing *Sorrell v. IMS Health*, 564 U.S. 552, 571 (2011)).

[49] *R.A.V. v. St. Paul*, 505 U.S. 377, 382 (1992). *See also Ashcroft v. ACLU*, 542 U.S. 656, 660 (2004) ("Content-based prohibitions, enforced by severe criminal penalties, have the constant potential to be a repressive force in the lives and thoughts of a free people. To guard against that threat the Constitution demands that content-based restrictions on speech be  presumed invalid[.]").

[50] *See Ashcroft*, 542 U.S. at 660, 665; *Lo*, 424 S.W.3d at 15 (citing *Ashcroft*, *id.* at 660).

[51] *Reed*, 576 U.S. at 163.  *Reed* dealt with a First Amendment challenge to a city ordinance rather than a statute like the one at issue in this case. *Id.* at 159.  In that case, the Supreme Court couched its analysis in terms of "government regulation." *Id.* at 163.  In *Thompson*, we used similar terminology when addressing a First Amendment challenge to a statute. *See Thompson*, 442 S.W.3d at 345.  No one argues that cases involving First Amendment challenges to administrative regulations or city ordinances are inapplicable to First Amendment challenges to statutory provisions.

[52] *Thompson*, 442 S.W.3d at 345 (quoting *Lo*, 424 S.W.3d at 15 n.12).

an adult from communicating with a minor via the internet in a sexually explicit manner is content based.[53]

In some situations, a regulation can be deemed content neutral if it is justified without reference to the content of the regulated speech.[54] Courts have analyzed this issue in two common situations: analysis of general "time, place, or manner" restrictions and, more specific, analysis of the "secondary effects" of the expressive activity.[55] A time, place, or manner restriction is permissible so long as it does not discriminate on the basis of the ideas expressed.[56] For example, in *Ward v. Rock Against Racism*, the Supreme Court held that an ordinance that sought to control the volume level of entertainment performances was content neutral because it was enacted to retain the quiet nature of the surrounding community.[57] This justification had nothing to do with the content of the expressive activity.[58] In contrast, an apparent time, place, or manner restriction that may not "fit neatly into either the 'content-based' or the 'content-neutral' category," may nevertheless be deemed content neutral if it is aimed at the secondary effects of the

---

[53] *Id.*

[54] *Id.* at 345 (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *City of Renton v. Playtime Theatres*, 475 U.S. 41, 47 (1986)).

[55] *See Ward*, 491 U.S. at 791; *see also Renton*, 475 U.S. at 47.

[56] *See Ward,* 491 U.S. at 791.

[57] *See id.* at 791–93.

[58] *Id.*

limited expressive activity.[59]  For example, in *City of Renton v. Playtime Theatres*, the Supreme Court held that an ordinance for adult theaters that was not clearly content based or content neutral was ultimately content neutral because it was aimed at the secondary effects of such theaters on the neighboring community.[60] Its purpose was to prevent crime, protect property values, and protect quality of life; therefore, it was not content based.[61] Thus, under both frameworks, the central consideration remains whether the regulation can be justified without reference to the content of the regulated speech.[62]

Section 21.16(b) is content based on its face.  As the court of appeals correctly stated, the statute does not penalize all intentional disclosure of visual material depicting another person.  Rather, it penalizes only a subset of disclosed images—those which depict another person with the person's intimate parts exposed or engaged in sexual conduct.[63]  That subset is drawn according to the subject matter—nudity and sex.  At the same time, it places absolutely no restriction on non-sexual utterances that violate another person's privacy interests.  Therefore, Section 21.16(b) "applies to particular speech because of the topic discussed or the idea or message expressed."[64]

---

[59] *Renton*, 475 U.S. at 47.

[60] *See id*. at 47–48.

[61] *Id.* at 48.

[62] *Thompson*, 442 S.W.3d at 345 (citing *id*; *Ward*, 491 U.S. at 791).

[63] *Cf. Thompson*, 442 S.W.3d at 347 (provision that penalized only a subset of non-consensual image and video producing activity, rather than all non-consensual acts of taking photographs and making visual recordings, was content-based).

[64] *See Reed*, 576 U.S. at 163.

We acknowledge that in *Hill v. Colorado*, the United States Supreme Court observed that it has never held "that it is improper to look at the content of an oral or written statement in order to determine whether a rule of law applies to a course of conduct."[65] But, the statute at issue in *Hill* made it unlawful to "knowingly approach" within eight feet of another person to pass out materials, protest, or counsel without that other person's consent outside of a health care facility.[66] The Court held that this statute was content neutral because it did not prohibit either a particular viewpoint or any subject matter that may be discussed by a speaker.[67] The statute at issue in this case targets more than the conduct of disclosure; it targets disclosure of particular communication.[68] Thus, *Hill* is distinguishable.

Moreover, the statute cannot be saved as a content-neutral time, place, and manner restriction or under an analysis of its secondary effects. The justification for the statute is to prevent the harm that results from having intimate images of oneself shared without

---

[65] *Hill v. Colorado*, 530 U.S. 703, 721 (2000).

[66] *Id.* at 707.

[67] *Id.* at 723.

[68] *See id.* ("The Colorado statute's regulation of the location of protests, education, and counseling . . . simply establishes a minor place restriction on an extremely broad category of communications with unwilling listeners. Instead of drawing distinctions based on the subject that the approaching speaker may wish to address, the statute applies equally to used car salesmen, animal rights activists, fundraisers, environmentalists, and missionaries. Each can attempt to educate unwilling listeners on any subject, but without consent may not approach within eight feet to do so.")

one's consent.  We cannot say that this has nothing to do with content.[69]  The sexually

explicit nature of the images is inextricable from the regulation; the harm results from the

intimate nature of the content.

### B.    Construing the Statute As Charged

Having found that the statutory provision at issue is content based, we agree with

the court of appeals that Section 21.16(b) is subject to strict scrutiny.[70]  Under a strict

scrutiny analysis, a regulation is justified only if it is narrowly tailored to serve a

compelling government interest.[71]  In this context, a regulation is "narrowly drawn" if it

uses the least restrictive means of achieving the government interest.[72]  If a less restrictive

means of meeting the compelling interest could be at least as effective in achieving the

legitimate purpose that the statute was enacted to serve, then the law in question does not

satisfy strict scrutiny.[73]

The State argues that there is a compelling government interest in protecting an

---

[69] *Cf. Ward*, 491 U.S. at 792 (concluding that justification for sound-amplification regulation—the city's desire to control noise levels at bandshell events to retain the quiet character of the nearby areas and to avoid undue intrusion into nearby residential areas—had nothing to do with content); *Renton*, 475 U.S. at 47–48 (concluding that predominate concerns for location restriction on adult motion picture theaters—the secondary effects of such theaters in the surrounding community—had nothing to do with the content of the adult films being shown inside such theaters).

[70] *See United States v. Playboy Entm't Grp.*, 529 U.S. 803, 813 (2000) (concluding that statute at issue was content based and therefore could stand only if it satisfied strict scrutiny); *R.A.V.*, 505 U.S. at 404 ("In *Burson*, seven of the eight participating Members of the Court agreed that the strict scrutiny standard applied in a case involving a First Amendment challenge to a content-based statute.").

[71] *Reed*, 576 U.S. at 163.

[72] *Playboy*, 529 U.S. at 813; *Lo*, 424 S.W.3d at 15–16, 19.

[73] *Lo*, 424 S.W.3d at 15–16.

individual from a substantial invasion of his or her privacy. Privacy constitutes a compelling government interest when the privacy interest is substantial and the invasion occurs in an intolerable manner.[74] "[S]ubstantial privacy interests are invaded in an intolerable manner when a person is photographed without consent in a private place, such as the home, or with respect to an area of the person that is not exposed to the general public, such as up a skirt."[75]

We agree with the State that the privacy interest in the statute is a compelling government interest. First, privacy in general has been recognized and protected by our common law, statutory law, and Constitution.[76] And particularly, the interest in sexual privacy is substantial. Sexual behavior is "the most private human conduct[.]"[77] Violations of sexual privacy are intrinsically harmful because sex is inherently private. The consequences of violations of sexual privacy can be serious and include harassment, job loss, and suicide.[78] Victims of revenge porn cannot counterspeak their way out of a violation of their most private affairs and bodily autonomy nor the serious harms that may

---

[74] *See Thompson*, 442 S.W.3d at 348 (citing *Snyder v. Phelps*, 562 U.S. 443, 459 (2011)).

[75] *Thompson*, 442 S.W.3d at 348.

[76] *See Billings v. Atkinson*, 489 S.W.2d 858, 860 (Tex. 1973) (recognizing tort of invasion of privacy); TEX. PENAL CODE § 16.02(b) (defining offenses for intercepting communications); *Katz v. Jones*, 389 U.S. 347, 360–61 (1967) (Harlan, J., concurring) (laying out the Fourth Amendment "reasonable expectation of privacy" test).

[77] *Lawrence v. Texas*, 539 U.S. 558, 567 (2003).

[78] *See* Senate Comm. on Crim. Justice, Bill Analysis 1, S.B. 1135, 84th Leg., R.S. (2015) (https://lrl.texas.gov/scanned/srcBillAnalyses/84-0/SB1135ENR.PDF); House Research Organization, Bill Analysis 4–5, S.B. 1135, 84th Leg., R.S. (2015), (https://lrl.texas.gov/scanned/hroBillAnalyses/84-0/SB1135.PDF).

accompany that violation.[79]  The Legislature recognized the severity of these harms and passed this law to protect against them.

Second, disclosing visual material when the depicted person reasonably expected it would remain private is an intolerable invasion of privacy, especially when the visual material shows the depicted person's intimate parts or sexual conduct.[80]

Although we find the government's interest in protecting sexual privacy is compelling in this case, Section 21.16(b)'s speech restriction must nevertheless be narrowly tailored to serve that interest.[81]  Under our usual rules of statutory construction, we must give the statute's text its plain meaning, read the words in context, and construe them according to rules of grammar and common usage.[82]  If this examination reveals a meaning that should have been plain to the legislators who voted on the statute, we ordinarily give effect to that meaning.[83]  For example, if the statute unambiguously creates strict liability with respect to an element, we have no power to rewrite the statute.[84]  We look beyond the statute's text and context to discern its meaning only if the

---

[79] *See, e.g.*, *United States v. Alvarez*, 567 U.S. 709, 726-28 (2012) (discussing counterspeech as a remedy for lies and "speech we do not like").

[80] TEX. PENAL CODE § 21.16(b)(1) (West 2017). *See id.* § 21.16(a)(1) ("Intimate parts" are "the naked genitals, pubic area, anus, buttocks, or female nipple of a person."); *Thompson*, 442 S.W.3d at 348.

[81] *See Reed*, 576 U.S. at 163.

[82] *See Boykin v. State*, 818 S.W.2d 782, 785–86 (Tex. Crim. App. 1991); *Yazdchi v. State*, 428 S.W.3d 831, 837 (Tex. Crim. App. 2014).

[83] *Timmins v. State*, 601 S.W.3d 345, 348 (Tex. Crim. App. 2020).

[84] *See Fleming v. State*, 455 S.W.3d 577, 581–82 (Tex. Crim. App. 2014) (upholding strict liability with respect to age of child for aggravated sexual assault of a child).

text does not bear a plain contextual meaning or if the text's unambiguous meaning would lead to "'absurd consequences that the legislature could not possibly have intended.'"[85] In those events, a court may consider extra-textual factors like legislative history,[86] the object of the statute, and the consequences of a particular construction.[87] When construing a statute in the face of a First Amendment challenge, courts have a duty to employ a reasonable, narrowing construction of a statute to avoid a constitutional violation if the statute at issue is readily susceptible to one.[88]

Intentionally disclosing intimate visual material is, by itself, not only a lawful act but a constitutionally protected one.[89] Section 21.16(b) criminalizes such disclosure only under certain privacy-invading circumstances—where the depicted person: (1) has not consented, (2) has a reasonable expectation of privacy, and (3) is identified.[90] Unless a culpable mental state applies to at least one of those surrounding circumstances, the

---

[85] *Timmins*, 601 S.W.3d at 348 (quoting *Boykin*, 818 S.W.2d at 785).

[86] *Boykin*, 818 S.W.2d at 785–86.

[87] *State v. Doyal*, 589 S.W.3d 136, 149 (Tex. Crim. App. 2019).

[88] *Thompson*, 442 S.W.3d at 339.

[89] *See Lo*, 424 S.W.3d at 19–20 ("'Sexual expression which is indecent but not obscene is protected by the First Amendment.'") (quoting *Sable Commc'ns of Cal. v. FCC*, 492 U.S. 115, 126 (1989)).

[90] *See* TEX. PENAL CODE § 6.03 (delineating three possible "conduct elements": nature of, result of, and circumstances surrounding conduct); *Young v. State*, 341 S.W.3d 417, 423 (Tex. Crim. App. 2011) (circumstances-of-conduct offenses prohibit otherwise innocent behavior that becomes criminal only under specific circumstances).

offense would effectively be a strict-liability crime.[91]  Such absolute liability would "raise

serious constitutional doubts;"[92] therefore, it is incumbent on the Court to read the statute

to eliminate those doubts so long as the statute is reasonably susceptible to such a

construction.

### 1.    Lack of Effective Consent

We first consider the lack-of-consent element in subsection (b)(1).  Section

21.16(b) places the culpable mental state "intentional" after the lack-of-consent element:

"A person commits an offense if (1) without the effective consent of the depicted person,

the person intentionally discloses . . . ."[93]  The lack-of-consent element is the first phrase

of (b)(1) and is offset from the rest of (b)(1) by a comma.  The culpable mental state

"intentionally" is in the phrase that immediately follows, and it is the only culpable

mental state that explicitly appears in the statute.  Both "without the effective consent"

and "intentionally" plainly modify "discloses," the conduct being addressed.  But we

---

[91] *See McQueen v. State*, 781 S.W.2d 600, 603–04 (Tex. Crim. App. 1989) ("[W]here otherwise innocent behavior becomes criminal because of the circumstances under which it is done, a culpable mental state is required as to those surrounding circumstances.").

[92] *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994).  The Supreme Court has noted on more than one occasion that, even when it comes to categorically unprotected speech, the government may not impose criminal liability on a person who harbored no *mens rea* as to the content or character of his speech.  *See New York v. Ferber*, 458 U.S. 747, 765 (1982) (demarcating child pornography as an unprotected category of speech—but cautioning that, "[a]s with obscenity laws, criminal responsibility may not be imposed without some element of scienter on the part of the defendant"); *Smith v. California*, 361 U.S. 147, 153 (1959) (holding that an anti-obscenity law "dispensing with any requirement of knowledge of the contents of the book on the part of the seller" . . . tends to impose a severe limitation on the public's access to constitutionally protected matter").  *But see also Hamling v. United States*, 418 U.S. 87, 123–24 (1974) (clarifying that *Smith* does not require the prosecution to prove that the defendant knew the materials he distributed met the legal definition of "obscenity"—only that he knew the "character and nature" of the materials).

[93] TEX. PENAL CODE § 21.16(b)(1) (West 2017).

cannot read the adverb "intentionally" to modify the effective-consent clause because reading "intentionally" backwards up the statute goes against the plain reading of the text in context under common grammar and usage rules. The placement of adverbs in a sentence affects their substantive meaning.[94] In ordinary English usage, placing a modifier before one word or phrase but after another limits the modifier. And, subsection (c), unlike subjection (b), places "intentionally" before the non-consent element.[95] Because we attempt to give effect to the whole statute, the distinction between the use of "intentionally" in subsections (b) and (c) appears to be a meaningful one.[96]

Finally, it would have made no sense for the Legislature to apply an "intentional" culpable mental state to the non-consent element because an intentional culpable mental state, by definition, cannot apply to a circumstance surrounding conduct. Penal Code Section 6.03 sets out the definitions of culpable mental states, and that section specifically limits the applicability of the "intentional" mens rea to the nature of conduct and the result of conduct.[97] The "knowing" and "reckless" mens reas, on the other hand, can apply to a circumstance surrounding conduct such as a lack of effective consent.[98]

---

[94] BRYAN A. GARNER, THE REDBOOK: A MANUAL ON LEGAL STYLE § 20, at 150 (West, 1st ed. 2002).

[95] TEX. PENAL CODE § 21.16(c) (West 2017).

[96] *See, e.g.*, *DeWitt v. Harris County*, 904 S.W.2d 650, 653 (Tex. 1995) (describing as a "familiar canon of construction" the rule that "when the legislature uses certain language in one part of [a] statute and different language in another, the court assumes different meanings were intended.") (internal quotation marks and citations omitted).

[97] TEX. PENAL CODE § 6.03(a).

[98] TEX. PENAL CODE § 6.03(b).

Without a culpable mental state attached to the lack-of-consent element, the text has broad applicability. The lack-of-consent element is a circumstance surrounding the conduct of disclosure that serves to separate the material based upon its incriminating character. The statute separates non-obscene pornography which may be constitutionally regulated from non-obscene pornography which may not. If the culpable mental state only attaches to the act of disclosure, the lack of a culpable mental state for the non-consent element effectively results in a constitutionally impermissible strict-liability offense. Some form of culpability must apply.[99]

Even though the statute's use of "intentionally" cannot grammatically be read to modify the phrase "without effective consent," that does not end the inquiry. Under well-established precedent, we can infer a requisite culpable mental state—even though the text does not expressly provide for one—to avoid the statute becoming an unconstitutional strict-liability crime.[100] Or, put another way, a statute is reasonably susceptible to such an interpretation because we presume that some form of mental

---

[99] *See McQueen*, 781 S.W.2d at 604 (explaining that some form of culpability must apply to those "conduct elements" which make the overall conduct criminal).

[100] *See* TEX. PENAL CODE § 6.02(b) ("If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element."); *Long v. State*, 931 S.W.2d 285, 291 (Tex. Crim. App. 1996) ("Under some circumstances, a mental state may be required even though not expressly prescribed by a statute's plain wording."). *See, e.g.*, *McQueen*, 781 S.W.2d at 603–04 (assigning culpable mental state of "knowledge" to lack-of-consent conduct element in the unauthorized-use-of-a-motor-vehicle statute even though the culpable mental state prescribed by the statutory language did not "syntactically modify" the circumstances surrounding the conduct—operation without the effective consent of the owner—but instead preceded the act of operating a vehicle); *Aguirre v. State*, 22 S.W.3d 463, 477 (Tex. Crim. App. 1999) (holding that municipal adult business ordinance required culpable mental state even though it did not so state); *Robinson v. State*, 466 S.W.3d 166, 172 (Tex. Crim. App. 2015) (reading into the failure-to-register-as-a-sex-offender statute "knowledge" and "recklessness" culpable mental states to the circumstance of the conduct—a person's duty to register).

culpability must apply when otherwise innocent behavior becomes criminal under the surrounding circumstances.[101]  Both this Court and the United States Supreme Court has done so on more than one occasion.  For example, in *Morissette v. State*, the federal embezzlement statute at issue read in relevant part, "Whoever embezzles, steals, purloins, or knowingly converts to his use . . . [.]" The Court had no problem reading a knowledge requirement backwards up the statute to apply to conduct that was not modified by a culpable mental state.[102]  The Court justified this construction by noting that the requirement of mental culpability was so ingrained that it requires no statutory affirmation.[103]

Similarly, in *United States v. X-Citement Video*, the Supreme Court read a knowledge requirement into the Protection of Children Against Sexual Exploitation Act of 1977.[104]  In that case, the owner of the business sold and then shipped multiple copies of movies featuring an under-aged girl named Traci Lords.[105]  The government charged the owner with shipping child pornography even though the proper grammatical reading did not require proof that the person shipping the pornography knew the material featured

---

[101] *McQueen*, 781 S.W.2d at 604.

[102] *Morissette v. United States*, 342 U.S. 246, 271 (1952).  The federal government charged Morissette with stealing and converting spent bomb casings that he thought had been abandoned. *Id.* at 247.  So while it could have been argued that he "knowingly converted" the casings, the issue was whether the evidence demonstrated that he had knowingly stolen them and whether the government was required to prove a knowing theft. *See id.* at 270–71.

[103] *Id.* at 252.

[104] 513 U.S. 64, 79 (1994).

[105] *Id.* at 66.

a child.[106]  The Supreme Court noted that reading the statute according the rules of

grammar would mean the government would only have to prove that the person knew he

shipped something, not that he knew that what he shipped was child pornography.[107]

However, the Court relied upon its decision in *Morissette* and the presumption of a

culpable mental state even when the statute, by its terms, does not contain one.[108]  The

Court noted that the child pornography statute was more like the common-law offenses

against "the state, the person, property, or public morals" in which a culpable mental state

was presumed and required.[109]  And though the defendant in that case made a First

Amendment overbreadth challenge to the statute, the Court resolved the claim as a matter

of statutory construction relying upon precedent that presumed a culpable mental state to

avoid constitutional issues generally.[110]

The problem with the statute at issue in *X-Citement Video* is analogous to the

statutory issue in this case.  There, the concern was knowledge of the illicit character of

the shipped material, namely the performer's age.[111]  Without knowledge of that

circumstance surrounding the shipping of the materials, the conduct would have been

---

[106] *Id.*

[107] *Id.*

[108] *Id.* at 70.

[109] *Id.* at 71.

[110] *See id.* at 78.

[111] *Id.* at 68.

otherwise innocent.[112] The Court noted that it would be odd for Congress to create a distinction between someone who inadvertently mailed what he knew to be child pornography and someone who intentionally mailed what he did not know to be child pornography. The same problem exists in this case with regard to the possible inadvertent spread of private material without the victim's consent. And, just as the Supreme Court recognized that a culpable mental state could be presumed regarding the character of the shipped materials in *X-Citement Video*, this Court can presume the attachment of a culpable mental state to the character of the material to be disseminated in this case.[113] Doing so is harmonious with this Court's practice of interpreting a statute such that its constitutionality is supported and upheld.[114] Though not precisely "narrowly tailored," the statute is susceptible to a narrowing construction as a matter of statutory interpretation that allows it to survive a constitutional challenge. Consequently, we can presume our Legislature intended the existence of the requisite culpable mental state of knowledge or recklessness (but not intentional) to the lack-of-consent element.[115]

---

[112] *Id.* at 69 ("If we were to conclude that 'knowingly' only modifies the relevant verbs in § 2252, we would sweep within the ambit of the statute actors who had no idea that they were even dealing with sexually explicit material. For instance, a retail druggist who returns an uninspected roll of developed film to a customer 'knowingly distributes' a visual depiction and would be criminally liable if it were later discovered that the visual depiction contained images of children engaged in sexually explicit conduct.").

[113] *See id.* at 71–78; *see also McQueen*, 781 S.W.2d at 603–04.

[114] *See Peraza*, 467 S.W.3d at 514 (citing *Luquis*, 72 S.W.3d at 365 n.26).

[115] As explained above, the requisite culpable mental state cannot be "intentionally" without offending common grammar rules and the presumption created by 21.16(c). Furthermore, "intentionally" does not apply to circumstances surrounding conduct but only to nature or result of conduct. TEX. PENAL CODE § 6.03(a); *Robinson*, 466 S.W.3d at 172 ("[A]lthough Penal Code § 6.02(c) generally requires that the culpable mental states of intent, knowledge, or recklessness apply when reading mental culpability into the statute under § 6.02(b), the statutory definition of 'intent' contains no

### 2. Expectation of Privacy

We next construe the reasonable-expectation-of-privacy element in subsection (b)(2). Section 21.16(b), as charged here, requires proof that the visual material was "obtained by the person . . . under circumstances in which the depicted person had a reasonable expectation that the visual material would remain private[.]"[116] The statute does not provide a culpable mental state for this expectation-of-privacy element. Although this element is downstream of "intentionally," it appears in its own subsection and does not have a clear grammatical or syntactical relationship with "intentionally." Furthermore, "intentionally" does not apply to circumstances surrounding conduct but only to nature or result of conduct.[117]

In light of the common-law presumption of a culpable mental state, we could presume the Legislature intended a culpable mental state applies to this element as we did with the element of effective consent. However, it is unnecessary to do so. The plain language itself requires the State to prove the circumstances under which the material was obtained by the defendant, circumstances in which the depicted person has a reasonable

---

provision for circumstances surrounding conduct, unlike the definitions of knowledge and recklessness."). It is therefore appropriate, under our precedents to read a statute to imply a lesser culpable mental state ("knowledge" or "reckless") to the lack-of-consent element. *See Sanchez v. State*, 995 S.W.2d 677, 685 n.7 (Tex. Crim. App. 1999) (construing the explicit "intentional" culpable mental state of the official-oppression-by-sexual-harassment statute, as it applied to the "unwelcome-sexual-advances" definition of sexual harassment, to require no greater scienter than an awareness—i.e., knowledge—by the actor that his sexual advances were unwelcome); *see also Lugo-Lugo v. State*, 650 S.W.2d 72, 87 (Tex. Crim. App. 1983) (Clinton, J., concurring).

[116] TEX. PENAL CODE § 21.16(b)(2) (West 2017).

[117] *See* TEX. PENAL CODE § 6.03(a).

expectation that the material would remain private. The proof necessary to establish "circumstances in which the depicted person had a reasonable expectation that the material would remain private" will necessarily be the same proof that would be necessary to establish that the defendant knew or was at least aware of a substantial risk that the victim reasonably believed the material would be kept private. In this manner, the text of the statute limits the scope of the statute in the same manner as applying a culpable mental state.

For example, if a defendant obtained the material by means of a promise to keep it private, he would have fostered the expectation of privacy, and if he obtained the material by means of a crime like breach of computer security, then he would have intentionally violated it. On the other hand, if the material simply appeared in the defendant's inbox with nothing to indicate that the depicted person expected the material to remain private, the State would not be able to prove the defendant obtained the material under circumstances that the victim reasonably expected the material to remain private. Either way, proof of the circumstances under which the defendant obtained the material would necessarily be the same proof that would be used to establish the culpable mental state of knowledge or recklessness.

This is analogous to our decision in *Febus v. State*.[118] There, we considered the

---

[118] 542 S.W.3d 568 (Tex. Crim. App. 2018).

elements of the statute criminalizing the failure to register as a sex offender.[119] We noted that the State was required to prove that the defendant knew of his duty to register, but we rejected the defendant's argument that we should interpret the statute as requiring proof that a defendant intentionally failed to register.[120] We explained that the second culpable mental state was unnecessary because the proof establishing a defendant's awareness of his duty to register will be the same facts that would be relied upon to establish an intentional failure to register.[121]

The same can be said of the "circumstances under which the defendant obtained the material" element at issue in this case. By proving the "circumstances" element, the State will necessarily present the same facts that would serve to establish a knowledge element. If the State cannot prove that the defendant obtained the material under circumstances in which a victim had an expectation that the material would remain private, it necessarily would not be able to prove knowledge. In this manner, the text of the statute excludes the type of innocent third-party disclosures that could raise constitutional issues.

The statute further protects against inadvertent or unknowing dissemination through its incorporation of a reasonable expectation of privacy as an element. Section 21.16(b) requires the State to prove that the victim's expectation was reasonable,

---

[119] *Id.* at 572–73.

[120] *Id.* at 576.

[121] *Id.*

suggesting an expectation that an ordinary person would recognize under the circumstances.[122] It would be insufficient to prove a merely subjective expectation by the depicted person; the evidence would have to demonstrate that the expectation was objectively reasonable under the circumstances. If, for example, the material was obtained by photographing a person who was purposely displaying his naked genitals in public, an ordinary person would not recognize as reasonable any expectation of privacy by the depicted person. But if the photo was taken in private with a promise of keeping it confidential, then an ordinary person would recognize a reasonable expectation of privacy.

Thus, the statute, as charged here under "obtained" rather than "created," requires proof that the material was obtained by the defendant under circumstances in which the depicted person had a reasonable expectation of privacy in the material, and proving such circumstances obviates the need to presume a knowledge requirement. This meaning should have been plain to the legislators who voted on that part of Section 21.16(b). Consequently, we cannot say that the statute, as charged here, requires a culpable mental state with regard to the expectation-of-privacy element. Nevertheless, the statute's terms are narrowly tailored to avoid prosecution of otherwise unknowing disclosure of material that a victim reasonably expects to remain private.

---

[122] *See Smith v. Maryland*, 442 U.S. 735, 740 (1979) (discussing objective and subjective requirements of the reasonable expectation of privacy in the suppression context); *see also Long v. State*, 535 S.W.3d 511, 519 (Tex. Crim. App. 2017) (same).

### 3.   Identification of the Victim

Lastly, we construe the identification element in subsection (b)(4)(A).  Section

21.16(b), as charged here, requires that the disclosure "reveals the identity of the depicted

person in any manner," including by "any accompanying or subsequent information"[123]

Appearing in its own subsection, it does not have a grammatically or syntactically

meaningful relationship with "intentionally."  Moreover, the disclosure itself, not the

defendant, is the subject of the sentence, and it satisfies the statute if it reveals the identity

of the depicted person in "any manner, including through any accompanying or

subsequent information."  The words "any manner" and "including" suggest a

non-exhaustive list; the only thing that matters is that the depicted person is identified,

regardless of how.  The defendant may have intentionally, knowingly, recklessly, or

negligently included the identifying information, and this part of the statute encompasses

all of those possibilities.  Under this view, the statute dispenses with a mental state with

respect to identification.

On the other hand, the defendant himself must intentionally disclose the material,

and it is that intentional disclosure—at least as charged in this case—that must reveal the

identity of the depicted person.[124]  Plus, revealing the depicted person's identity in "any

manner" does not refer to a mental state but to the means of identification, including

---

[123] TEX. PENAL CODE § 21.16(b)(4)(A) (West 2017).

[124] TEX. PENAL CODE § 21.16(b)(1), (4)(A) (West 2017).

"accompanying or subsequent information[.]"[125]  Given this context, Section

21.16(b)(4)(A) does not unambiguously impose strict liability on the identification

element but can be plausibly read as imposing a culpable mental state on that element.

Because there are two plausible readings of this portion of the statute, we should choose

the reading that has fewer constitutional issues associated with it.[126]  Consequently, we

hold that the State must prove that the defendant himself knowingly or recklessly revealed

the identity of the depicted person.[127]

### C.      As Charged and Construed, the Statute Survives Strict Scrutiny

Under the charging instrument here and as we construe the statute, Section

21.16(b) criminalizes the disclosure of intimate visual material when the defendant (1)

knowing or being aware of a substantial and unjustifiable risk that he lacked the depicted

person's effective consent (2) intentionally discloses such material (3) obtained by him

under circumstances known to him in which the depicted person had a reasonable

expectation of privacy in the image, and through that disclosure the defendant (4)

knowingly or recklessly identifies and (5) harms the depicted person.  We find that the

statute, under this construction, is narrowly tailored—i.e., it is the least-restrictive means

of serving the government's compelling interest in protecting sexual privacy.

---

[125] TEX. PENAL CODE § 21.16(b)(4)(A) (West 2017).

[126] *See Clark v. Martinez*, 543 U.S. 371, 380–81 (2005) (explaining that if one possible, plausible construction of a statute would "raise a multitude of constitutional problems, the other should prevail").

[127] *See supra*, note 115.

First, in addition to the requirement that the disclosure be intentional, the lack-of-consent element narrows the statute's reach to an actor who intentionally discloses visual material despite knowing or being aware of a substantial and unjustifiable risk that the depicted person did not effectively consent to the disclosure. In those cases, the actor has, at the very least, some objective fair warning that the sensitive and potentially harmful speech he is about to utter is contrary to the wishes of the person who might be harmed by it. Providing criminal penalties for speech made in disregard of this fair warning is a narrowly tailored means to deter that speech—and only that speech—thereby vindicating, to the greatest extent constitutionally permissible, the depicted person's expectation of privacy.

Second, the expectation-of-privacy element further narrows the scope of the statute, even without an express culpable mental state, because (1) the reasonable expectation of privacy requirement provides adequate protection; and (2) as a practical matter, the evidence needed to prove the circumstances under which the defendant obtained the material would necessarily satisfy a culpable mental state of knowledge. And, when this element is read with the lack-of-consent element, the statute only punishes those who knew or were aware of but consciously disregarded a substantial and unjustifiable risk that the circumstances giving rise to the depicted person's reasonable expectation that the material would be private.

Third, the identification element narrows the statute's reach to those who

knowingly or recklessly reveal the identity of the depicted person through disclosure. Such a requirement means that a person could intentionally disclose visual material otherwise prohibited by the statute if the depicted person is not identified or identifiable by future recipients. But we reiterate that, because of the language in his indictment and how we construed the statute above, Appellant cannot be convicted for disclosure of a photograph whose subject was identified by a third party. Consequently, the statute, as it is charged here, is narrowly tailored to address—and punish—only the people who were in intimate relationships and then vengefully circulated intimate visual material.

We acknowledge that those who receive intimate photos and forward them to others without knowing the disclosure lacks effective consent fall outside the statute's narrowed scope. However, the subjects of such material are not wholly without protection in those circumstances. Copyright law can provide an adequate vehicle for curbing these third-party disclosures. This body of law protects original works of authorship fixed in any tangible medium of expression,[128] including photographs.[129] An author of an original work "gains 'exclusive rights' in her work immediately upon the work's creation, including rights of reproduction, distribution, and display."[130] If

---

[128] *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019).

[129] Amanda Levendowski, *Using Copyright to Combat Revenge Porn*, 3 NYU J. OF INTELL. PROP. & ENT. LAW 422, 440 (2014) (citing 17 U.S.C. §§ 101, 102). *See also Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 56–61 (1884) (photographs can be protected by copyright law); *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 547 (1985) (citing *Sarony* for the proposition that "originator of a photograph may claim copyright in his work").

[130] *Fourth Estate Pub. Benefit Corp.*, 139 S. Ct. at 887.

copyright law applies and no exceptions are implicated,[131] a third-party consumer of a "revenge porn" photograph could be subject to copyright infringement because they are not the copyright holder.[132]  Further, copyright law also provides a legal avenues for the victim of "revenge porn" to stop the third-party spread of their intimate visual material.

Lastly, the alternatives offered by Appellant are not as effective in achieving the government's compelling interests.[133]  First, Appellant points to civil liability as a less-restrictive means of achieving the governmental interest here.  This is unpersuasive because a civil remedy, though less heavy-handed, is also generally less effective than a criminal remedy.  Furthermore, if this argument were valid, no criminal statute could ever touch speech.  But the Supreme Court has not struck criminal statutes on that summary basis, instead analyzing them under conventional First Amendment doctrines.[134]

Second, Appellant offers elements found in Texas tort law or in similar criminal statutes from other jurisdictions.  For example, he recommends requiring the elements

---

[131] Exceptions might include "fair use" or use under a blanket license.  *See, e.g.*, 17 U.S.C. § 107;  *Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*, 441 U.S. 1, 4 (1979).

[132] In cases where the revenge porn image is a "selfie", the subject taking the photo of herself is the copyright holder.  And in the remaining cases—i.e., where the photograph was taken by someone other than the subject—the photographer would be the copyright holder.  In either scenario, the later consumer cannot be the copyright holder.

[133] *See Playboy*, 529 U.S. at 816 (if a plausible, less restrictive alternative is offered to a content-based speech restriction, the government must use it unless the alternative will be ineffective to achieve its goals); *Ex parte Lo*, 424 S.W.3d at 15–16 (" If a less restrictive means of meeting the compelling interest could be at least as effective in achieving the legitimate purpose that the statute was enacted to serve, then the law in question does not satisfy strict scrutiny.").

[134] *See Alvarez*, 567 U.S. at 715 (applying "exacting" (a.k.a. strict) scrutiny to a criminal statute touching speech); *United States v. Stevens*, 559 U.S. 460, 474 (2010) (analyzing a criminal statute touching speech for overbreadth); *Holder v. Humanitarian Law Project*, 561 15 U.S. 1, 39 (2010) (holding criminal statute valid as applied under First Amendment).

"physical intrusion or a wiretap." But these requirements would not address the harm that the statute was intended to address since intimate visual material is often supplied by the depicted person or created with his cooperation and consent.[135] Appellant also suggests requiring an element like "highly offensive to a reasonable person." But "highly offensive to a reasonable person" is essentially encompassed in an obscenity determination,[136] and we have already said that material regulated by Section 21.16(b) is non-obscene.

Next, Appellant suggests requiring an element that the material is not of "legitimate public concern," thereby excluding material that is a matter of public concern from the scope of the statute. Speech deals with "matters of public concern" (1) when it can "be fairly considered as relating to any matter of political, social, or other concern to the community;" or (2) when it "is a subject of legitimate news interest," i.e., a subject of general interest and of value and concern to the public.[137] It is unclear whether a sexual

---

[135] *See* Senate Comm. on Crim. Justice, Bill Analysis 1 S.B. 1135, 84th Leg., R.S. (2015)(https://lrl.texas.gov/scanned/srcBillAnalyses/84-0/SB1135ENR.PDF) ("In many instances, the images are disclosed by a former spouse or partner who is seeking revenge."); *see also* Eugene Volokh, *Freedom of Speech and Bad Purpose*, 63 UCLA L. REV. 1366, 1405–06 (2016).

[136] *See Miller v. California*, 413 U.S. 15, 24 (1973) (explaining that basic guidelines for trier of fact in determining whether a work which depicts or describes sexual conduct is obscene is whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest, whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.).

[137] *See Snyder*, 562 U.S. at 453.

image depicting a public official is a "matter of public concern."[138]  But even if it is, the objective aspect of the expectation-of-privacy element includes the idea that public matters are given special protection.[139]  Sexual material dealing with "matters of public concern" would not be something a person could reasonably expect to remain private.  Therefore, a defendant who discloses such matters would fall outside of the statute's scope.

Further, Appellant argues that punishing only intentional, serious harm, rather than merely "harm," would be a less-restrictive means.  That would likely make the law less restrictive, but it would also not address the governmental interest in preventing the intrinsic harm from violations of bodily and sexual privacy.  Lastly, Appellant argues that basing liability only on the defendant's actions would be a less-restrictive means.[140]  Because we have determined that a culpable mental state either implicitly attaches to a necessary circumstances-surrounding-conduct element or that the statutory terms already provide the same level of protection that implying a culpable mental state would, Appellant's argument is without merit.

---

[138] *Id.* at 454 (deciding whether speech is of public or private concern requires a court to examine the content, form, and context of that speech, as revealed by the whole record); *San Diego v. Roe*, 543 U.S. 77, 80 (2004) (in the context of a government employer regulating the speech of its employees, videos of an employee engaging in sexually explicit acts did not address a public concern; the videos "did nothing to inform the public about any aspect of the [employing agency's] functioning or operation").

[139] *See Snyder*, 562 U.S. at 452 ("[S]peech concerning public affairs is more than self-expression; it is the essence of self-government. Accordingly, speech on public issues . . . is entitled to special protection.") (internal quotation marks and citations omitted).

[140] Brief for Appellant at 57 ("If someone else comes along later, without the discloser's consent or even knowledge, and says, 'that is A,' the discloser can be prosecuted for the disclosure, despite the identification not having been done by him and not being under his control.").

In summary, there is no way to adequately prevent the harm from disclosure of intimate material without restricting the disclosure of intimate material. As charged, the statute targets intentional, identifying disclosures that cause harm by requiring the defendant be knowing or reckless about the depicted person's lack of consent and that the State shows there was a reasonable expectation of privacy under known circumstances giving rise to that expectation. Conversely, the statute, as charged in this case, does not reach identifying disclosures that were made consensually, less than intentionally, or without violating a reasonable expectation of privacy or causing harm. Therefore, it is narrowly tailored to those situations where the compelling interest is at stake. Section 21.16(b), as charged here, satisfies strict scrutiny.

## III.     Section 21.16(b) is not overbroad.

Even if a law satisfies strict scrutiny, it may still violate the First Amendment. The United States Supreme Court has recognized two types of facial challenges: (1) typical facial attacks—i.e., no set of circumstances exists under which that statute would be valid; and (2) facial attacks under the "overbreadth" doctrine—i.e., a law may be invalidated, even if it might have some legitimate applications, if it prohibits a substantial amount of protected speech.[141] Appellant's challenge to Section 21.16 falls within the latter.

---

[141] *Stevens*, 559 U.S. at 473. *See also Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 796 (1984) ("There are two quite different ways in which a statute or ordinance may be considered invalid 'on its face'—either because it is unconstitutional in every conceivable application, or because it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally 'overbroad.'").

The purpose of the overbreadth doctrine is to prevent the chilling of future speech.[142] The doctrine allows a litigant to benefit from the statute's unlawful application *to someone else*[143]—i.e., the litigant asserts not that the law is unconstitutional with respect to his case, but with respect to so many third-party cases that the law will chill free speech.[144] This Court has applied the overbreadth doctrine before,[145] but it is "strong medicine" that is used "sparingly and only as a last resort."[146] Accordingly, this Court will only strike a law as overbroad if no limiting construction can be placed on the statute.[147]

The overbreadth of a statute must be "'substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep.'"[148] The statute must prohibit a substantial amount of protected expression,[149] and the danger that the statute will be unconstitutionally applied must be realistic[150] and not based on "'fanciful

---

[142] *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973).

[143] *State v. Johnson*, 475 S.W.3d 860, 865 (Tex. Crim. App. 2015) (citing *Board of Trustees v. Fox*, 492 U.S. 469, 483 (1989)).

[144] *Broadrick*, 413 U.S. at 612, 615.

[145] *See, e.g.*, *Thompson*, 442 S.W.3d at 349–50.

[146] *Johnson*, 475 S.W.3d at 865 (citing *New York State Club Ass'n v. City of New York*, 487 U.S. 1, 14 (1988); *Broadrick*, 413 U.S. at 613; and *Thompson*, 442 S.W.3d at 349).

[147] *See Broadrick*, 413 U.S. at 613.

[148] *Perry*, 483 S.W.3d at 902.

[149] *Id*. (citing *Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 244 (2002) and *Thompson*, 442 S.W.3d at 349–50); *Johnson*, 475 S.W.3d at 865 (citing same).

[150] *Perry*, 483 S.W.3d at 902 (citing *Regan v. Time*, 468 U.S. 641, 651 n.8 (1984) and *Thompson*, 442 S.W.3d at 350); *Johnson*, 475 S.W.3d at 865 (citing same).

hypotheticals.'"[151]  The person challenging the statute must demonstrate from its text and from actual fact "'that a substantial number of instances exist in which the Law cannot be applied constitutionally.'"[152]

The first step in an overbreadth analysis is to construe the challenged statute,[153] which we have already done above.  The plainly legitimate sweep of Section 21.16(b) is its application to cases where a defendant, who knows or is aware but consciously disregards a substantial and unjustifiable risk that he does not have effective consent of the depicted person, intentionally discloses a sexually explicit image obtained by him under circumstances known to him in which the depicted person had a reasonable expectation that the image would remain private, and through his disclosure he knowingly or recklessly identifies the depicted person and causes him harm.  This a legitimate application of the statute because, as discussed above, it is narrowly tailored to serve a compelling governmental interest in protecting privacy.

Appellant, however, argues that the plainly legitimate sweep of Section 21.16(b) is actually much narrower than that because a statute's only legitimate sweep is speech that falls into one of the categories of historically unprotected speech.[154]  He maintains that Section 21.16(b)'s only legitimate sweep is obscenity and child pornography. He relies on

---

[151] *Perry*, 483 S.W.3d at 902.

[152] *Id.* (quoting *New York State Club Ass'n*, 487 U.S. at 14); *Johnson*, 475 S.W.3d at 865 (quoting  same).

[153] *William*s, 553 U.S. at 293.

[154] *See Stevens*, 559 U.S. at 468 (discussing categories of historically unprotected speech).

*Ashcroft v. Free Speech Coalition*[155] for his claim that any statute is overbroad if it regulates a substantial amount of protected speech as compared with categorically unprotected speech.

At issue in *Free Speech Coalition* was the constitutionality of a law that criminalized virtual child pornography.[156]  The government argued that it needed to ban computer-generated child pornography—protected speech—in order to fight child pornography made with real children—unprotected speech—because the two things are hard to distinguish.[157]  The Court responded that "[t]he overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process."[158]  While that statement accurately described the outcome in the context of *Free Speech Coalition*, the Supreme Court has not applied this understanding of the overbreadth doctrine outside that context.

For example, in *Williams-Yulee v. Florida Bar*, the Court addressed the constitutionality of a judicial canon prohibiting the solicitation of campaign funds by judicial candidates.[159]  No one claimed that such a solicitation was "a category of

---

[155] 535 U.S. 234 (2002).

[156] *Id.* at 239–40.

[157] *Id.* at 249, 254–55.

[158] *Id.* at 255.

[159] 575 U.S. 433 (2015).

unprotected speech."[160]  But that did not decide the constitutionality of the statute.  "The question is instead whether [the First] Amendment permits the particular regulation of speech at issue here."[161]  If overbreadth were as comprehensive as Appellant claims, then *Williams-Yulee* would not have reached the issue that it did; it simply would have held that the solicitation of judicial campaign contributions was protected speech that could not be regulated.  Instead, it upheld the law under strict scrutiny.[162]

Similarly, in *Playboy*, the Court addressed the regulation of sexually oriented programming on cable television.[163]  The speech at issue was protected.[164]  The question was what standard the government had to meet in order to restrict it.[165]  Overbreadth did not foreclose the analysis just because the speech was protected.[166]

In *Stevens*, the Court explicitly declined to designate animal-cruelty depictions as unprotected speech.[167]  But that did not end its analysis. Instead, it said, "Because we decline to carve out from the First Amendment any novel exception for [the challenged law], we review Stevens's First Amendment challenge under our existing doctrine" and

---

[160] *Id.* at 446.

[161] *Id.*

[162] *Id.* at 444, 455.

[163] *Playboy*, 529 U.S. at 814.

[164] *Id.*

[165] *Id.*

[166] *See id.* (applying strict scrutiny standard to determine whether statute violated the First Amendment).

[167] *Stevens*, 559 U.S. at 469, 472.

then spent ten pages discussing whether the law was overbroad.[168]  The elaborate analysis

is inexplicable if the issue begins and ends with determining that the regulated speech is

not historically unprotected.[169]

We decline to adopt Appellant's definition of the plainly legitimate sweep of

Section 21.16(b).  The statute's plainly legitimate sweep is the scope in which it may be

constitutionally applied, as defined above.  The issue is whether it reaches a substantial

number of cases outside that plainly legitimate sweep. We conclude that it does not.

Appellant and amici point to works of art and images that may be relevant to

public discourse as evidence of Section 21.16(b)'s overbreadth.  But there is no evidence

that people who willingly participate in the creation of sexually explicit art commonly do

so with any reasonable expectation of privacy, and the likelihood seems remote.[170]

Consequently, Section 21.16(b) is unlikely to chill such speech.  As for images relevant to

public discourse, it is doubtful that the non-consensual disclosure of sexually explicit

material would be relevant to public discourse, and even if it were, there is no evidence

that this would often be the case.  Thus, in instances of artistic endeavors and images

relevant to public discourse, as-applied challenges would be more appropriate than facial

---

[168] *See id.* at 472–82.

[169] *See, e.g.*, *Broadrick*, 413 U.S. at 602, 615–16 (refusing to strike as overbroad a law restricting "political activities" of state employees).

[170] *See Hicks*, 539 U.S. at 122 (overbreadth claimant has the burden of proof).

challenges.[171]  Therefore, we reject Appellant's overbreadth challenge.

### Conclusion

Although Section 21.16(b) is a content-based restriction, it is nevertheless narrowly tailored to serve a compelling governmental interest, namely, protecting sexual privacy.  To prove the violation of Section 21.16(b), as charged in this case, the State must show that: (1)  Appellant intentionally disclosed a sexually explicit image obtained by him under circumstances in which the depicted person had a reasonable expectation that the image would remain private; (2) Appellant knew or was aware of but consciously disregarded a substantial and unjustifiable risk that he did not have effective consent of the depicted person; and (3) Appellant knowingly or recklessly identified the depicted person and caused that person harm through the disclosure.  Further, the statute, as properly construed, is not overbroad.  We reverse the judgment of the court of appeals and remand the case for consideration of Appellant's remaining point of error on appeal.

Filed: May 26, 2021

Do Not Publish

---

[171] *See Ex parte Ingram*, 533 S.W.3d 887, 900 (Tex. Crim. App. 2017) (potential but unlikely First Amendment violations should be challenged as applied rather than by overbreadth).